For the reasons already stated, the judgment of the court below is—*Reversed*.

---

STATE OF IOWA, Appellant, v. LIZZIE CHRISTIE, Appellee.

CRIMINAL LAW: Accomplices—Rule as to Corroboration. The issue of corroboration of an accomplice is carried to the jury by *direct* or *circumstantial* evidence (1) which corroborates the accomplice in at least one of his material fact assertions, and (2) which tends to connect the accused with the commission of the offense charged. Record reviewed, and held that the court was in error in directing a verdict for want of corroboration of a charge of robbery.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

MARCH 14, 1922.

THE defendant was indicted for the crime of robbery. At the close of the evidence for the State, the court directed a verdict in behalf of the defendant, and the State appeals.—*Reversed*.

*Ben J. Gibson*, Attorney General, *A. G. Rippey*, County Attorney, and *Vernon R. Seeburger*, Assistant County Attorney, for appellant.

*Clyde C. Putnam*, for appellee.

. FAVILLE, J.—The Iowa State Bank occupied a banking house near the corner of Sixth and Locust Streets in the city of Des Moines. Before 9 o'clock on the morning of March 25, 1919, the bank was robbed by John Keating and Robert Don Carlos. Both men were soldiers, then stationed at Camp Dodge. Don Carlos was a married man, living in an apartment at 315 West Ninth Street. The appellee occupied an apartment in the same building, immediately across the hall from the Don Carlos apartment. A man named Lynch, and his wife, Hazel, occupied the apartment adjoining the one occupied by Don Carlos and his wife. Keating was a single man, and a frequent visitor at the Don

Carlos apartment, at which place he met the appellee and a man by the name of Patten. It also appears that two of the employees of the bank were frequently at the appellee's apartment, and quite often ate there. Keating and Don Carlos were both witnesses upon the trial of the appellee. According to their testimony, it appears that they had had some general talk with each other while at Camp Dodge, in regard to robbing a bank, but no particular bank had been mentioned. Keating, it appears, had previously served two prison terms and one penitentiary term. Keating got acquainted with the appellee in the early part of March, 1919, at the apartment house referred to. About a week before the robbery, he had a talk with appellee with reference to robbing the Iowa State Bank, in which she told him that there was $90,000 that was easy to get, and that she had it fixed with a couple of people on the inside of the bank, and had a key that would open the door of the bank; that the key was one which she had secured from a party who worked in the bank. He also testified to a conversation in the presence of Don Carlos, with regard to the plans for robbing the bank. The night preceding the robbery, Keating slept in the Don Carlos apartment. Don Carlos and his wife were there, and the next morning, these three parties, together with Patten and Hazel Lynch, had breakfast at about 7 o'clock in the appellee's room. After breakfast, Mrs. Lynch went to her own apartment, and so did Mrs. Don Carlos. After these women had left, the remaining parties planned the robbery for that morning. It was arranged that, after the robbery, they were to meet the appellee at her sister's house on the "east side" of Des Moines. There was some discussion about driving an automobile in connection with the robbery, and Patten finally agreed to drive the car. The talk and understanding were that the spoils were to be divided into five parts: Keating and Don Carlos were to get one fifth each, the appellee and Patten were to get one fifth between them, and the other two-fifths share was supposed to go to the parties on the inside of the bank. Patten secured a car from one Curran, and waited with said car on Grand Avenue near the alley between Sixth and Seventh Streets, near the bank. Keating and Don Carlos had about a hundred dollars in one-dollar bills in a small canvas bag, and went over and knocked at

the door of the bank, it being before banking hours. One of the employees came to the door, and the parties asked whether they might make a deposit. On being informed that they might do so, they went into the bank, and went over to the depositors' counter, and made a pretense of making out a deposit slip, when they suddenly whirled, and presented revolvers, and compelled the bank officers to go into the lavatory in the back of the bank, where they locked them in. They then took about $23,000 in money, and war savings stamps and bonds aggregating more than $21,899, and placed the same in a blue kit bag, and passed out of the front door of the bank on Locust Street and went up the alley to the waiting automobile, into which they immediately got, and Patten drove the car into the country. They stopped at a farmhouse, and obtained permission of the farmer to drive the car into the timber, which they did, and divided the spoils into five equal parts, three of which were given to Patten, and Keating and Don Carlos each took one fifth. In the woods, they partially burned some papers which they had taken from the bank. These were afterwards found. They then drove back toward Des Moines, and on the return trip, were compelled to stop and replace a wheel with a spare wheel which was carried on the auto. Patten went to a telephone booth, and telephoned to Mrs. Don Carlos to meet them in a taxicab at a designated point on the east side in Des Moines. The parties drove to the agreed rendezvous at the home of the sister of the appellee on the east side in Des Moines, and Patten went into the house, and returned to the car with the appellee. The bag containing the money had been placed in a tool bag that was lying in the car, and appellee carried it into the house. Keating and Don Carlos met the taxicab shortly afterward, with Mrs. Don Carlos, and drove to Mrs. Rowatt's house on East Fourteenth Street, where they stayed until 10 o'clock that night, and then drove back to the apartment house on West Ninth, where the appellee and Patten then were. Keating and Don Carlos left for St. Joseph that night, and Keating went to Chicago, and returned to Des Moines. He testified that he afterwards saw the appellee and talked with her about the robbery.

The foregoing is a general statement of the transaction as testified to by Keating, and, with some variation in details, the

testimony of Don Carlos as to what transpired in connection with the robbery is to the same general effect. Don Carlos testified that the appellee gave him a key, which was either a Yale or Corbin key,—a small key, about two or three inches long,—which she stated was the key that would open the bank. The evidence showed that the bank was locked with a Yale or Corbin lock.

The wife of Don Carlos was a witness, and testified that, on the morning of the robbery, she and her husband had breakfast with the other parties named, at the apartment of the appellee, about 7 o'clock. She testified that, the night before the robbery, Keating stayed at the apartment of her husband and herself. Two or three days before the robbery, the appellee borrowed an alarm clock from Mrs. Don Carlos, and the witness testified that the appellee's custom was to get up late in the morning, and the witness frequently called her. The morning of the robbery, the appellee was up early, and called the rest of the parties before 7 o'clock, and served breakfast for them about that time. This witness also testified that she saw the appellee give her husband a flat key that resembled a Yale or Corbin key, shortly before the robbery, and that she said something about "here is a key," or "here is the key." This witness also testified that, the morning of the robbery, the appellee requested the witness to answer her telephone if it rang that day; that no such request had been made before; and that the telephone did ring, and Mrs. Don Carlos answered it, and received the message with regard to meeting her husband and Keating in East Des Moines. She also testified that she went to the "east side" of Des Moines in a taxicab, and saw the appellee and Patten there; and that, shortly afterwards, she met her husband and Keating, and was driven to Mrs. Rowatt's; and that, when she returned to the apartment house in the evening, she was in her own and the appellee's apartments, and that the appellee and Patten were there.

There was other evidence tending to corroborate the testimony of Keating and Don Carlos with regard to the use of the car, to their dividing the money in the woods and burning the papers, and to the injury to the tire on the car.

Patten was tried and convicted, and on appeal to this court, the case was affirmed. *State v. Patten,* 191 Iowa 639.

At the close of the testimony for the State in the instant case, the lower court directed a verdict, on the ground that there was no sufficient corroborating evidence of the testimony of the accomplices to take the case to the jury. The State appeals, and the sole question for our determination is whether or not there was sufficient evidence in the case tending to corroborate the testimony of the two accomplices, Keating and Don Carlos, to warrant a submission of the case to the jury.

Code Section 5489 is as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

We have frequently had occasion to apply this section of the statute. It is not obscure or uncertain. The testimony of the accomplice must be corroborated "by other evidence which shall tend to connect the defendant with the commission of the offense." Unless there is evidence which can fairly be said to tend to connect the defendant with the commission of the offense, outside of the testimony of an accomplice, then a conviction cannot be permitted to stand. Furthermore, the corroboration of an accomplice is not sufficient, under the statute, "if it merely show the commission of the offense or the circumstances thereof." We have held, however, that the corroboration need not be of every material fact testified to by the accomplice. It is sufficient to meet the requirements of the statute if the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the offense. *State v. Cowell,* 149 Iowa 460; *State v. Dorsey,* 154 Iowa 298; *State v. Allen,* 57 Iowa 431; *State v. Hall,* 97 Iowa 400; *State v. Patten,* supra.

It is also true that the corroborating testimony of an accomplice need not be direct. It may be circumstantial; and whether direct or circumstantial, if it corroborates the testimony of the accomplice in a material part, and tends to connect the defendant with the offense charged, it is sufficient to meet the requirements of the statute and to carry the case to the jury. *State v. Schlagel,* 19 Iowa 169; *State v. Miller,* 65 Iowa 60; *State*

v. *Dietz,* 67 Iowa 220; *State v. Van Winkle,* 80 Iowa 15; *State v. Dorsey,* supra; *State v. Patten,* supra.

In the instant case, our inquiry at this point is whether or not there is any testimony, direct or circumstantial, that corroborates the testimony of the accomplices, Keating and Don Carlos, in any material part thereof, and which tends to connect the appellee with the commission of the offense charged. The mere fact of the acquaintance and relations of the parties, that they were frequently together both before and after the robbery, in and of itself is not sufficient to corroborate the testimony of the accomplices and to connect the appellee with the commission of the offense; but such evidence is proper to be considered, if there is corroboration of any material fact that does tend to connect the appellee with the commission of the offense. We are not concerned, in this inquiry, with regard to the general character of the confessed robbers who were accomplices, nor with the fact that, in some of the details concerning the transaction, the testimony of the two witnesses is not in every respect harmonious and consistent. These are all matters that would be weighed and considered by a jury, in determining the credibility of the witnesses. Corroborating testimony is not lacking in the instant case. There is evidence, both direct and circumstantial, entirely outside of the testimony of the accomplices, that was sufficient to take the case to the jury, for it to determine the ultimate question of corroboration, under proper instructions of the court. The tendency of the testimony of the wife of Don Carlos was to corroborate the testimony of the accomplices and to connect the appellee with the commission of the offense. She testified in regard to the relations existing between the parties, to the meeting at the apartment of the appellee, to the fact of the appellee's borrowing an alarm clock; that appellee called the parties early on the morning of the robbery, and served breakfast for them, and then remained in her apartment with the three accomplices, Keating, Don Carlos, and Patten, after breakfast, and after Mrs. Don Carlos and Mrs. Lynch had withdrawn. This was the time when the final plans for the robbery were made. Thereafter, she arranged with Mrs. Don Carlos to answer any telephone call; and such telephone call was sent in, pursuant to the plan between the robbers and

appellee. She went to East Des Moines, and was seen there by Mrs. Don Carlos with Patten, shortly after the robbery. This witness also testified to the fact of seeing the appellee give to Don Carlos a key of the kind described by the accomplices as being the key furnished by her for the purpose of unlocking the bank door.

We are not called upon to pass upon the sufficiency of the evidence. We are of the opinion, however, that there was sufficient corroborating evidence in the case to satisfy the requirements of the statute, tending to connect the appellee with the commission of the offense charged. Its weight and sufficiency were for the jury to determine.

We think the court erred in directing a verdict in behalf of the appellee, and the judgment appealed from must, therefore, be—*Reversed.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur.