STATE OF IOWA, Appellee, v. LOUIS CLAY, Appellant.

No. 43640.

REHEARING DENIED MAY 17, 1937.

W. F. Murphy and Frank W. Shaw, for appellant.

E. A. Baldwin, County Attorney, and Edward L. O'Connor, Attorney General, for appellee.

STIGER, J.—On October 9, 1934, the grand jury of Johnson County, Iowa, returned an indictment against the defendant Louis Clay charging him with the crime of murder in that "the said Louis Clay in the county and state aforesaid, on or about, the 24th day of December, 1933, wilfully, deliberately, premeditatedly and with malice aforethought murdered George J. Folsom." The defendant entered a plea of not guilty and upon trial to a jury, he was convicted of assault with intent to commit murder and sentenced to imprisonment for thirty years, from which judgment this appeal is taken.

1144

This is the second time this case has been before us on appeal. The opinion rendered on the first appeal is reported in 220 Iowa 1191, 264 N. W. 77. The material facts of this case are fully set out in the former opinion and will not be repeated here. In that case we held that the witness, Mabel Davis, was an accomplice of the defendant Louis Clay.

▮▮▮ The defendant has assigned several errors as grounds for reversal. The appellee contends that the first three assignments cannot be considered by this court because of defendant's flagrant disregard of section 5 of Rule 30. If this were a civil suit, these assignments of error would be disregarded. In a criminal case, involving a grave offense and severe penalty, a failure to fully comply with our rules should not deprive the defendant of a full and fair review of the case, if from the record the claimed errors can be ascertained. State v. Ingram, 219 Iowa 501, 258 N. W. 186.

▮▮▮ I. Defendant's first ground for reversal is that the witness, Byington, was permitted over appellant's objection, to testify regarding the attitude of deceased toward womankind. The witness, after testifying that George J. Folsom and his two brothers and a sister had lived together for many years, none having married, and that after the death of his sister and brothers the deceased lived alone and never had a housekeeper, was asked what George J. Folsom's attitude toward women in general was.

"A. Well, his attitude generally was very adverse to society and very much so against women. I have never known him to associate with women during the last twenty-five or thirty years of his life."

Plaintiff was entitled to bring out some of the history and general background of decedent's life and while the objection might well have been sustained as immaterial, no prejudice resulted to the defendant through the admission of this evidence. Defendant also claims that the court did not give an instruction limiting the effect of this testimony. No instruction was requested by defendant and the court was under no duty to give a special instruction on this testimony.

II. Defendant complains of instruction No. 7. This instruction correctly stated to the jury the propositions that the state must establish beyond a reasonable doubt in order to sus-

tain a conviction. The first proposition in this instruction is that, on or about December 24, 1933, George J. Folsom died as the direct result of an assault or assault and battery upon him in Johnson County. The defendant's claim, apparently, is that the instruction should not have been given because of the failure of the state to prove the corpus delicti. The state's witness, Mabel Davis, testified that the defendant choked the old gentleman until he was satisfied that he was dead. A physician testified for the defendant that if a person is strangled that the body starts to turn blue and that if death occurred while being strangled that this blue, or cyanotic condition, would remain and show on the body after death. The doctor also testified that if the deceased did not die while being strangled, that life and circulation of the blood would dissipate the blue condition, known as cyanosis. When the decedent was found on Christmas morning, there was no evidence of cyanosis. He also testified that death could occur during the assault from fright or exertion.

At the time of the death of Mr. Folsom, he was recovering from an attack of pneumonia which had impaired his heart. The witness Davis testified that Mr. Folsom struggled with Clay and pleaded with him to spare his life. The physician further testified that under the conditions, there would be two probable causes of death, one from strangulation alone, the other being acute dilatation of the heart as a result of the exertion the heart was put to during the struggle.

■■■ The witness Davis also testified that after Clay had choked the deceased to death, he propped the kitchen door open with a stick of wood so that it could not be closed. Mr. Folsom's body, when found, was frozen. The evidence was sufficient to carry to the jury the question as to whether George J. Folsom died as a direct result of an assault and battery made upon him by Louis Clay.

III. It is alleged by the defendant that he was entitled to an acquittal because of lack of corroboration of the testimony of his accomplice, Mabel Davis. For corroboration of the testimony of Mabel Davis the plaintiff relies on the record history of the ring, Exhibit 4, which is substantially as follows: The ring was owned and in the possession of the deceased, George J. Folsom and the family for several years prior to the murder. Mabel Davis testified that after Clay choked the old gentleman to death, she saw him take, among other valuables, two rings, state's Ex-

hibits 4 and 5, which he hid in his mother's home; that she remained in the Clay home until they went to Waukegan, Illinois, and that about two weeks after the murder, Clay gave the rings to her and she wore them until she and Clay went to Waukegan; that at Waukegan, she gave Clay the ring, Exhibit 4, which he pawned.

The defendant admits that Mabel Davis gave him the ring at Waukegan and that he, accompanied by John Scott, pawned the ring to George Rockingham. Scott and Rockingham corroborate this testimony of the defendant.

The statement of Mabel Davis that she gave the ring to Clay at Waukegan and that he pawned it is corroborated. The question is whether this testimony satisfies the requirements of Code section 13901 which reads as follows:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

█▌█ If the testimony of an accomplice is corroborated by other witnesses in any material point tending to connect the defendant with the commission of the offense, it is sufficient. State v. Stader, 194 Iowa 1087, 190 N. W. 373; State v. Hall, 97 Iowa 400, 66 N. W. 725.

The evidence adduced to corroborate an accomplice need not be strong and any corroborative evidence legitimately tending to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient. It is not necessary that the testimony offered as corroboration be entirely inconsistent with innocence. State v. Bosch, 172 Iowa 88, 153 N. W. 73; State v. Seitz, 194 Iowa 1057, 187 N. W. 695.

The rings were stolen immediately after the murder. We may assume robbery was a motive for the crime. The testimony of the accomplice as to the disposition of the stolen property was material evidence. Her testimony that she gave the ring to Clay and that he pawned it was corroborated in a manner to satisfy the statute. The close association of the accomplice and defendant before and after the murder may be considered with the above corroborative testimony.

█▌█ IV. The testimony of Mabel Davis, set out in Division

three above, relative to the ring, Exhibit 4, was from the transcript of her testimony taken on the former case and was offered by the State and admitted in evidence as rebuttal testimony. The defendant claims this evidence was not proper rebuttal evidence; that this testimony should have been introduced in its evidence in chief and that the admission of the evidence violated section 10, Article I, of the Constitution of the State of Iowa, which provides that in criminal prosecutions, the accused shall have the right to be confronted with the witness against him.

The defendant Clay testified that the first time he saw the ring, Exhibit 4, was when Mabel Davis gave it to him at Waukegan, Illinois, and that he never had possession of the ring prior to that time. The testimony of the witness Davis at the former trial was in direct rebuttal to this testimony of Clay.

With regard to the contention of the defendant that the transcript of the evidence of the former trial was inadmissible, because he was entitled to be confronted with the witness, Mabel Davis, the record shows that witnesses were examined and it was found by the court that Mabel Davis was not present in the court room and was not in the state of Iowa and was beyond the reach of a subpoena and permitted the state to read into the evidence from the transcript the testimony of Mabel Davis given at the former trial. The witness being absent from the jurisdiction and out of the reach of the court's process the above constitutional provision was not violated and the trial court was right in overruling defendant's objection to the testimony on this ground. This subject is well considered in the case of State v. Brown, 152 Iowa 427, 132 N. W. 862.

■■■ V. Defendant assigns as error the overruling of defendant's objection to improper cross-examination of the defendant's character witness, John Barcus. This witness testified that the defendant had the reputation of being a quiet, peaceable and inoffensive man. The cross-examination, in part, is as follows:

"Q. Do you know he spent part of his life in the Iowa Reform School for stealing? A. No."

The cross-examination should have been limited to reports and rumors in the community to negative good reputation as to the trait involved and it was error to permit the State to interrogate the witness about this particular crime. State v. Poston,

199 Iowa 1073, 203 N. W. 257; State v. Rowell, 172 Iowa 208, 154 N. W. 488; State v. Kimes, 152 Iowa 240, 132 N. W. 180.

However, as the answer was in the negative and favorable to the defendant, the defendant was not prejudiced by the mere asking of the question. State v. Kessler, 189 Iowa 567, 178 N. W. 513; State v. Rowell, 172 Iowa 208, 154 N. W. 488; State v. Richards, 126 Iowa 497, 102 N. W. 439; State v. Tippet, 94 Iowa 646, 63 N. W. 445. Furthermore, the trial court promptly admonished the jury not to give the questions and answers in connection with the cross-examination of John Barcus any consideration and that they were stricken from the record.

The general rule is if evidence has been erroneously received, the error in the admission is cured by striking it and instructing the jury to disregard the evidence. In exceptional and extreme instances where the effect on the jury of the admission of improper evidence is regarded as clearly and seriously prejudicial, its subsequent withdrawal from the jury will not be regarded as sufficient to cure the error. State v. Moran, 131 Iowa 645, 109 N. W. 187; State v. Booth, 121 Iowa 710, 97 N. W. 74.

The evidence elicited on cross-examination does not come within the exception to the general rule and under the above circumstances no reversible error resulted from the cross-examination of this character witness.

Finding no error, the case must be and is affirmed.—Affirmed.

ANDERSON, PARSONS, HAMILTON, and MITCHELL, JJ., concur.