STATE OF IOWA, appellee, v. RONALD M. WEAVER, appellant.

No. 52150.

DECEMBER 13, 1966.

REHEARING DENIED FEBRUARY 6, 1967.

Henry Wormley, of Des Moines, for appellant.

Lawrence F. Scalise, Attorney General, Ronald A. Riley, Assistant Attorney General, and Maynard Hayden, of Indianola, County Attorney, for appellee.

BECKER, J.—Defendant was indicted for the crime of breaking and entering. Upon jury trial he was found guilty as charged. His conviction is based primarily on the testimony of three accomplices. His appeal here is bottomed on the charge that there was insufficient corroboration of the accomplices. This case has previously been before us under the title of Weaver v. Herrick, 258 Iowa 796, 140 N.W.2d 178, on the question *in forma pauperis* appointment of appellate counsel and costs.

At about 3 a.m. Sunday, August 2, 1965, William Edgar Graham, who lives behind Shoemaker's Hardware Store at Milo, Iowa, was awakened by his wife. He saw someone loading articles into a 1959 Chevrolet in the alley behind the store. Mr. Graham called Mr. Shoemaker, the owner, and then followed the Chevrolet in his own car. He met Shoemaker along the way. Together they followed the car to Ollie Weaver's farm. The two men contacted the sheriff. When the officers arrived they went into the Ollie Weaver farmyard where three men were sitting in the Chevrolet car. The men were Larry Mc-Neeley, Dean Caulkins and Jack Merrifield. All three were arrested at that time. The sheriff saw Ronald Weaver in the Ollie Weaver house, returned with a search warrant and found the stolen articles in a boat on the same premises. It was then that he arrested defendant Ronald Weaver.

Merrifield, Caulkins and McNeeley all testified for the State. They stated that the breakin was defendant Weaver's idea and he participated in the breakin and theft of some $2400 worth of goods from the Shoemaker Hardware Store in Milo. They were clearly accomplices. Their testimony was that Caulkins, McNeeley and Weaver were together Saturday, August 1, 1965, from before noon. The three worked on a go-cart. They drove around Saturday afternoon in defendant's car, drove out to defendant Weaver's parents' home, and back to Weaver's house in Des Moines to eat. After eating they again drove around. This time they stopped at a Fina gas station and defendant bought three pairs of brown cotton gloves. Later that same evening Merrifield joined the other three at Weaver's house in Des Moines. They discussed a way to get money. Using Merrifield's car, as Weaver's car was too well known where they were going, they drove to Milo. Merrifield said they drove two miles past Milo and had to awaken defendant Weaver so that he could direct them to where they were going; i.e., the hardware store.

The four young men carried the merchandise out of the store and loaded it into the Chevrolet. The goods were transported in the car to the Ollie Weaver farm and loaded into a tarpaulin covered boat that was standing in the yard. Immedi-

ately after caching the loot all four left the farm but had a flat tire. They returned to the farm and defendant went into a trailer house located there to see his father about getting the flat tire fixed; the other three remained out in the car. It was at this time that the officers arrived and arrested the accomplices. The defendant was arrested later in the Weaver trailer house, some ten feet from the boat containing the stolen goods.

The officers found the material in the boat. They also found a brown glove on the ground lying between the boat and the trailer in which Ollie Weaver lived and Ronald Weaver was arrested. Five other similar brown gloves were found in the back of the Merrifield car. These gloves were identified by the accomplices as the gloves purchased by them and paid for by defendant Sunday evening after supper, and used by the accomplices in the breakin.

After the trio had testified the State produced James Conley, who had known Weaver for five or six years. He told of having seen Weaver in his 1964 red and black Ford with two other persons at 8 p.m. August 1 on Army Post Road. This was the time McNeeley and Caulkins said they were with Weaver in that area.

The State also called two employees of the gas station who identified Weaver as the person who paid for the gloves that had been purchased that Sunday evening.

Ollie Weaver was also called. Unaccountably he does not state his relationship to defendant. His testimony was short: "I am 68 years old and live between Ackworth and Milo in the County. There was a boat on my place on August 1, or August 2, 1965. I don't know whose boat it was. I didn't bring it there and I don't know who did. Ronald Weaver was talking about bringing a boat to the farm and said he was trading for one. There was a boat covered with a canvas. I didn't see it brought there and don't know who brought it."

I. The general propositions of law are not in dispute here. Iowa Code, 1966, section 782.5 provides: "782.5 Corroboration of accomplice. A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the

offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

State v. Gates, 246 Iowa 344, 351, 67 N.W.2d 579; reviews the legal propositions appropriate here. We briefly note those principles necessary to this case:

"Whether there is corroborative testimony is a question of law, but its sufficiency is a question of fact for the jury. State v. Kurtz, 183 Iowa 480, 482, 165 N.W. 355; State v. Williams, 218 Iowa 780, 254 N.W. 42; State v. Patten, 191 Iowa 639, 644, 182 N.W. 788; State v. Christie, 193 Iowa 482, 187 N.W. 15; State v. Cotton, 240 Iowa 609, 33 N.W.2d 880. * * *

"In the Clay case we considered the quantum of evidence required and said: 'The evidence adduced to corroborate an accomplice need not be strong and any corroborative evidence legitimately tending to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient.' "

II. When considering the sufficiency of evidence to meet the requirements of the corroboration statute quoted, each case must be judged on its own facts. In State v. Ladehoff, 255 Iowa 659, 668, 122 N.W.2d 829, the following citation is set forth with wry humor:

"Facts vary so much in the numerous cases that they are generally of small value as precedents. In Wigmore on Evidence, Third Ed., Volume VII, section 2059(e), page 334, we find this: 'The requirement of corroboration leads to many rulings as to sufficiency, based wholly upon the evidence in each case; from these no additional development of principle can profitably be gathered. As recorded precedents of Supreme Courts, they are mere useless chaff, ground out by the vain labor of able minds mistaking the true material for their energies.' "

We have examined the cases cited by defendant where the corroborative evidence was held insufficient. They are, of course, factually distinguishable. State v. Ladehoff, supra, notes State v. Potter, 243 Iowa 970, 54 N.W.2d 516, and the cases cited therein, relied upon here by defendant. But the factual differences between the cases cited and the Ladehoff case were

sufficient to distinguish them and permit a finding that the corroborative evidence was sufficient. So it is here.

Further, Ladehoff makes one more point that should be noted: "But as we pointed out in the Taylor case, there may be a 'combination of circumstances' which entitles the jury to reach the conclusion that they corroborate the accuser's story." Loc. cit. 255 Iowa 669, 122 N.W.2d 835.

III. Examination of all of the evidence produced by the State reveals ample corroboration. The Ollie Weaver farm was identified by McNeeley as Ronnie Weaver's folks' place. The fact that Ollie was not present when the boat was actually brought to the farm is not sufficient to destroy the father's testimony. What the father did say was sufficient circumstantial evidence, if believed, to connect the son to the boat that was used as a hiding place for the loot.

■ Likewise, in this day of mass production it was not necessary that the gloves be identified positively as the ones paid for by defendant. Testimony of similarity plus the coincidence of the number of gloves seized, and purchase shortly before the commission of the crime was strong circumstantial evidence tending to connect defendant with the gloves and thus with the crime. See State v. Gates, supra, where the same problem was faced but pertained to the stolen goods rather than articles used in the commission of the crime. We there said (page 349 of 246 Iowa) : "Obviously many items of merchandise today have little or no distinguishing mark, and any attempt to positively identify them would be questionable if not dishonest. Positive identification, though helpful, is not absolutely necessary, for other circumstances may aid in generating a jury question as to their actual identity." See also State v. Ladehoff, supra, re similar problems concerning the identity of such articles.

■ Thus, reviewing the State's case on corroboration, we find strong circumstantial evidence that the boat in which the stolen goods were found belonged to defendant, the gloves used in the breakin were paid for by defendant, the defendant was seen by an independent witness with two other persons in his own car the evening of the robbery at the time and place two of the accomplices said they were with defendant, the goods

were found on defendant's father's farm and defendant was arrested shortly after the crime in close vicinity to the stolen goods.

Defendant's second assignment of error is predicated on lack of due process for failure to direct a verdict because of absence of corroboration. What has been said re the first assignment disposes of the second assignment in the same manner.

We conclude that a jury question was generated by the State's evidence. The jury found defendant guilty as charged.— Affirmed.

GARFIELD, C. J., and LARSON, SNELL, MOORE, MASON and RAWLINGS, JJ., concur.

STUART, J., takes no part.

THORNTON, J., not sitting.