STATE OF IOWA, appellee, v. EVA JUNE GILL, appellant.

No. 52638.

(Reported in 154 N.W.2d 722)

Henry T. McKnight, of Des Moines, for appellant.

Richard C. Turner, Attorney General, Wm. Claerhout, Assistant Attorney General, and Ray Fenton, County Attorney, of Des Moines, for appellee.

Larson, J.—A county attorney's information was filed October 21, 1964, charging the defendant Eva June Gill with the crime of robbery, contrary to the provisions of sections 711.1 and 711.3 of the 1962 Code of Iowa. Subsequent to a plea of not guilty, trial to a jury resulted in a verdict of guilty. Judgment was entered on May 3, 1965, but on appeal to this court the cause was reversed and remanded. State v. Gill, 259 Iowa 142, 143 N.W.2d 331 (1966).

The case was retried and again resulted in defendant's conviction. On March 6, 1967, the court sentenced her for a term not to exceed ten (10) years in the Women's Reformatory at Rockwell City, Iowa, and she appeals. We affirm.

Assigned as error are the trial court's refusal to direct a verdict for defendant and its denial of her motion for judgment notwithstanding the verdict, but her principal contention is that, since Vickie Ann Myers was an accomplice within the meaning of the law, the State failed to corroborate her testimony by other evidence which tends to connect this defendant with the commission of the offense, and that the corroboration submitted was insufficient to meet the requirements of section 782.5 of the 1966 Code.

From the record we learn that on June 4, 1964, about 4 p.m., a woman later identified as Vickie Ann Myers, wearing a black raincoat, entered the Dairy Queen store at 2225 Ingersoll, Des Moines, Iowa, produced a Dairy Queen bag and a gun, and

demanded money. After obtaining money from an employee, she made her escape in an automobile, with an accomplice doing the driving. The employee testified that the robber placed the money in a Dairy Queen bag and ran from the store, and that she shouted to two men in the parking lot to stop the fleeing woman. One of those men said that he saw the robber leave the Dairy Queen and run to a 1954 Ford automobile in the alley bearing license number 6200, and that he ran to the end of the lot to get a better look but could not state whether an accomplice in the getaway car was a boy or a girl. The license number was given to the police when they arrived shortly thereafter.

Officer Edward J. Rand testified that while on routine patrol in the vicinity of Sixth and School Streets, he received information of the Dairy Queen robbery and was told to be on the lookout for a blue 1954 Ford with license number 6200. He spotted a car matching this description in the 900 block of Sixth Street just south of School. As he was looking at the car, a lady approached, claimed ownership of the car, and identified herself as Eva June Gill. Upon his request she gave him the keys to the car and permitted him to search it. This search, among other things, revealed a Dairy Queen bag resembling the one used in the robbery and an ashtray in the glove compartment which contained $45.60 in bills and change. He said Mrs. Gill was then placed under arrest and her car impounded.

Officer James Moran and another policeman arrived at this location about the same time as Detective Daniel L. Kauzlarich. Moran stated that, while he and Mrs. Gill were standing beside the open door of the car, Officer Rand found the money in the car and showed it to them. He explained that a Dairy Queen bag was found under the front seat of the Gill car.

Detective Kauzlarich testified that he found a box of blank cartridges in Mrs. Gill's car, the kind that are designed to fit a .22 caliber starter pistol similar to the gun that had been used in the robbery. He said that, among other articles in the car, was a black raincoat that resembled the coat worn by the robber of the Dairy Queen store.

Frank Weideman, another police officer, testified that, after defendant had been arrested and taken to the police station, he

had a conversation with her, and that as a result thereof he and Detective McCarthy arrested Vickie Ann Myers. Pursuant to information given by her on the way to the police station, they stopped at a tavern at Seventh and Center Streets and McCarthy went into the tavern. He returned with a small gun later identified as a .22 caliber starter pistol. He further stated that on this occasion Vickie Ann Myers admitted the robbery and asserted that the defendant did not have anything to do with it.

James P. McCarthy testified that as a result of information given them by Vickie Myers he went into the ladies restroom in the tavern on Seventh and Center and found a hidden gun. He also stated that when they arrived at the police station he took a statement from Vickie Myers, which was introduced as Exhibit "F". This statement, later repudiated, in essence confessed the crime and exculpated the defendant Gill.

Janet Williams, a bartender at the Dilly Dally tavern, testified that on the day of the robbery Eva Gill and Vickie Myers came in the tavern about 2 p.m. and remained there until about three o'clock or 3:15 when they left, and that they returned together about 4:30 or 4:45 p.m.

Vickie Myers testified that when she and the appellant left the Dilly Dally tavern they went directly to the Dairy Queen, with Eva Gill driving. She said that they had with them the small gun used in the robbery, which defendant had bought that day for the purpose of using it to hold up the Dairy Queen, and that while defendant waited at the rear of the store in her car, she committed the robbery and placed the money in a Dairy Queen bag. She further related that after the robbery she and defendant Gill visited a couple of taverns and that she left the gun in the ladies room of one of them. She also stated that the defendant's car was parked in front of the Sixth Avenue Tap and was there when the investigating officer arrived.

Appellant maintains this evidence is not direct, and circumstantially is not sufficient to meet statutory requirements as construed by our past decisions. Although it may be that some of the circumstances revealed by this testimony, standing alone, might not be sufficient under some of our pronouncements, the

trial court was satisfied this evidence, when viewed in toto, met the legal requirements of our laws.

I. The general propositions of law involved herein are not in dispute. Section 782.5 of the Code, 1966, provides: "A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Whether there is corroborating evidence such as is required by the provisions of section 782.5 is a question for the court, but the sufficiency of that evidence is a question for the jury. State v. Weaver, 259 Iowa 1369, 147 N.W.2d 47, 49; State v. Gates, 246 Iowa 344, 351, 67 N.W.2d 579; State v. Cotton, 240 Iowa 609, 33 N.W.2d 880; State v. Williams, 218 Iowa 780, 254 N.W., 42; State v. Christie, 193 Iowa 482, 187 N.W. 15; State v. Patten, 191 Iowa 639, 644, 182 N.W. 788; State v. Kurtz, 183 Iowa 480, 482, 165 N.W. 355; State v. Clay, 222 Iowa 1142, 271 N.W. 212.

In the latter case, cited with approval in State v. Weaver, supra, we specifically considered the quantum of evidence required and said: "The evidence adduced to corroborate an accomplice need not be strong, and any corroborative evidence legitimately tending to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient."

In State v. Cotton, supra, involving a crime of obtaining money by false pretenses, the court reviewed the applicable legal principles and, in holding under the evidence presented that there was corroborative evidence giving rise to a jury question, said at page 641 of 240 Iowa: "Whether there is such corroboration depends much upon the circumstances of the particular case. * * * Whether there is any corroborating testimony is a question of law, but its sufficiency is a question of fact for the jury." It also said:

"The corroborating evidence may be either circumstantial or direct" and that it "need not be of every material fact testified to by the accomplice."

In State v. Weaver, supra, we again reviewed these legal principles and upheld the conviction of defendant charged with breaking and entering, although based primarily on the testimony of three accomplices. After a review of the evidence showing the boat in which the stolen goods were found belonged to defendant, gloves used in the break-in were paid for by defendant, and defendant was seen by independent witnesses with two others in his car the evening of the robbery, and his arrest followed shortly after the crime in the vicinity of the stolen goods, we held this was sufficient to furnish corroborating evidence required by section 782.5 of the Code. The corroborating evidence in the instant case is at least as strong as that in the Weaver case.

The quantum of evidence required to corroborate the testimony of an accomplice need not be strong, nor does it need to corroborate every material matter. Corroborative evidence that legitimately tends to connect the accused with the commission of the crime and lend support to the testimony of the accomplice is sufficient. State v. Weaver, State v. Gates, State v. Cotton and State v. Clay, all supra. Also see 23 C. J. S., Criminal Law, section 812(1).

II. The sole issue before us in this appeal is whether under the evidence, circumstantial or direct, as a matter of law, there was such corroborative evidence as would permit the submission of the question of its sufficiency to the jury. The trial court thought so and we must agree.

As to whether there is such corroborating evidence, each case must be judged on its own facts. State v. Weaver, supra; State v. Ladehoff, 255 Iowa 659, 668, 122 N.W.2d 829. In Wigmore on Evidence, Third Ed., Volume VII, section 2059(e), page 334, it is stated: "The requirement of corroboration leads to many rulings as to sufficiency, based wholly upon the evidence in each case." We are satisfied the evidence and testimony of independent witnesses here tend both to connect the defendant with the crime of robbery and to support the testimony of the accomplice, Vickie Myers.

The Dairy Queen employee said the person who robbed her wore a black raincoat, and a similar coat was found in de-

fendant's locked car a short time later. She also said a small gun used in the robbery resembled the one found in the tavern restroom which the accomplice said defendant bought for this job, that the Dairy Queen bag used in the robbery resembled the bag found in defendant's car when searched by the officers, and that the money taken in the robbery did not include pennies. No pennies were found in the glove compartment ashtray of defendant's car. Defendant denied ownership of this money.

An independent witness at the scene of the robbery identified defendant's car, although he could not say that she was then the driver. The car was found by the police in defendant's possession not far from the scene of the crime shortly thereafter.

Defendant and the accomplice were seen together at a tavern for over an hour prior to the time of the robbery. They left together and returned together an hour or hour and a half later. This period of time coincided with the time of the robbery. The accomplice testified they spent some time after the robbery driving around and visiting other taverns, including the one where she left the gun.

There is also evidence that blank shells for such a gun were found in defendant's car, and officer testimony that he found the gun where the accomplice said she put it. That this evidence relates to material matters cannot be denied, and clearly it tends to support the testimony of Vickie Myers at this trial.

True, defendant's alibi evidence tended to explain all these circumstances and refute the inference of defendant's participation in the crime, but this evidence relates primarily to credibility and not the sufficiency of the circumstances tending to connect this defendant with the crime.

Although we could see why a jury might choose to disbelieve the story of the accomplice, it did not do so, and we cannot interfere with its determination of credibility sufficiency. The material circumstances shown did tend to connect the defendant with the crime charged and corroborate the Myers testimony.

III. We have examined all of the cases cited by appellant and do not find them helpful to her. State v. Winters, 209 Iowa 565, 228 N.W. 286, State v. Mikesell, 70 Iowa 176, 30 N.W. 474,

and State v. Cowell, 149 Iowa 460, 128 N.W. 836, are not in point. In each of these cases the court found that there was no testimony other than that of the confessed accomplices which tended in the slightest degree to connect the defendant with the commission of the offense charged.

The case of State v. Gill, 202 Iowa 242, 210 N.W. 120, involved the crime of larceny, and the court held under questionable circumstances that the taking and transporting of stolen eggs, testified to by the accomplice, were properly corroborated, and affirmed a jury conviction therein.

In State v. Pauley, 210 Iowa 192, 230 N.W. 555, the only evidence corroborating a material matter in the controversy was that of an independent witness who stated that he observed a person whom he believed to be the defendant drive past his home. This statement tended to support the credibility of a similar statement made by the accomplice. Since this was the only corroboration of the accomplice's statements, the court properly held it insufficient to comply with the statute.

In State v. Duncan, 158 Iowa 652, 138 N.W. 913, the only corroborative evidence was the testimony of two witnesses that they saw defendant near the scene of the crime on various occasions and the finding of a gun in a place where the accomplice said defendant had placed the gun. The court felt the circumstances were insufficient. The record revealed that the defendant's place of business was only 100 feet from the scene of the crime and that he frequently had been at that place to meet incoming trains. It also appeared the accomplice could have placed the gun in its hiding spot himself, and that this was not sufficiently connected to justify its use as corroborative evidence.

Although some testimony and circumstantial evidence which tended to connect defendant with the alleged crime, standing alone, would be insufficient to satisfy the statutory requirements for corroboration, we find herein sufficient other circumstantial evidence, independently shown, to comply with the requirements of our statutes.

IV. We are impressed by defendant's argument attacking the credibility of certain witnesses, but as it was the jury function to weigh the testimony of the accomplice and the

alibi witness, we cannot interfere with its determination in this case. It apparently believed the testimony given by the accomplice in this trial and, since this story related to material matters properly corroborated by both circumstantial and direct evidence, we must affirm the conviction and judgment rendered herein.—Affirmed.

All JUSTICES concur.