**STATE of Iowa, Appellee,**

**v.**

**James NEELY, Appellant.**

**No. 52645.**

Supreme Court of Iowa.

March 5, 1968.

Norman G. Jesse, Des Moines, for appellant.

Richard C. Turner, Atty, Gen., David S. Sather, Asst. Atty. Gen., Arlen F. Hughes, Mount Ayr, County Atty., for appellee.

MOORE, Justice.

Defendant James Neely was charged, tried and convicted of breaking and entering in violation of section 708.8, Codes 1962, 1966, and has appealed. We affirm.

Defendant's two assigned errors are that his motion to suppress and objections to testimony based on an alleged unreasonable search and seizure should have been sustained and the evidence was insufficient to corroborate the testimony of an accomplice as required by Code section 782.5.

About 10 p. m., January 21, 1966, Mr. and Mrs. Homer Shaw discovered the front door of Barton Abarr's Phillips 66 service station in the town of Redding, Ringgold County, was standing open. They so notified Abarr at his nearby residence and returned to the station with him.

They discovered the lower pane of glass was broken out of the door, the pop machine pried open, the cigarette display disarranged and the cash register open. The frame which had enclosed the safe in the wall had been pried away and the safe taken. Abarr had closed and locked the station at 8:20 p. m.

About 8:30 p. m., Alta Jeanes, a local resident, drove by the station and observed an automobile parked in the station driveway with three persons sitting in it. She described it as a blue Ford with a white top, in the 50's.

A 1955 Ford, white over green, license 21–859, occupied by Tom Pinegar, Ronald Johnston, Barbara Nelson and defendant James Neely had been stopped by the highway patrol in Adair or Adel the day before. The local law enforcement officers had seen the vehicle in Leon and Lamoni the night before the break-in. They had also seen it in that area the day of the break-in.

Abarr upon discovering the break-in notified Sheriff Strange who came to the scene. The sheriff immediately put out a radio call to all police officers to be on the lookout for a white over green 1955 or 1956 Ford, license number 21–859. A Missouri trooper reported the car had been observed in Hatfield, Missouri earlier that evening.

In response to the radio dispatch Patrolman Wignall and Sergeant Grotewold of the Iowa Highway Patrol drove to Lamoni where they observed the described Ford parked in the driveway next to the apartment occupied by Mr. and Mrs. Alfred Pinegar. They later learned it was registered to Alfred's brother, Tom Pinegar of Des Moines. They then notified other officers by radio the car had been located.

Other officers, including Deputy Sheriff Houck and Officer Peel soon arrived.

They remained in the road and while discussing what should be done observed a young man, later identified as Ronald Johnston, come up the road and enter the Pinegar residence. Johnston then came out with a girl and started toward the Ford. Officers Wignall and Houck approached them, inquired where they were going and were told they were going for a ride. Wignall told them not to leave because the officers wanted to look inside the house. Johnston stated they better get a search warrant. The two young people went back into the Pinegar apartment. Houck left for the purpose of getting a search warrant. Wignall returned to the patrol car and reported to Sergeant Grotewold.

The officers became suspicious of what had or could happen and decided to go around and observe the opposite side of the apartment building. As officers Wignall and Peel went around the building they saw a window screen from the Alfred Pinegar apartment on the ground. They also observed many footprints in the snow leading south from the window.

The officers followed these footprints three to four hundred feet south and while searching around a large woodpile near another house they heard a noise which caused them to throw the light from their flashlights toward an outhouse. They there saw defendant Neely who, in response to their inquiry of what he was doing there, stated he was urinating. The fly of his trousers was unzipped. Wignall then took defendant to his patrol car where he was retained. He refused to answer any question other than give his name.

Soon after Neely was placed in the patrol car Mr. and Mrs. George Black drove up, parked and started toward the Alfred Pinegar residence. They were known by some of the officers as parents of Mrs. Pinegar. The Blacks were told if they entered the apartment they would not be permitted to leave until after a search under a warrant was made. Mrs. Black stated it would be all right for the officers to enter but they did not do so until Mrs. Pinegar came to the door and specifically consented to the officers' entry. Mrs. Pinegar then turned on the lights in her home and the officers entered.

On entering the Pinegar home the officers observed the stolen safe near the door sitting on its top. A hole had been broken through the bottom and cement fragments were on top of the safe and on the floor around it. There was an open tool chest on the floor and a hammer on the safe. A fruit can full of pennies was found on the davenport.

The two Pinegar brothers were later found hiding in another house in Lamoni and a large amount of paper money recovered.

I. Defendant's motion to suppress made before trial alleged the search of the Pinegar premises both in and outside of the apartment was an illegal search and seizure and sought to suppress all evidence related thereto. After an evidentiary hearing the trial court overruled the motion to suppress. Defendant's contentions were reasserted during the trial and in his motion for new trial.

 On this appeal defendant makes no attack on the evidence discovered by the officers following Mrs. Pinegar's consent that they enter her apartment home. This is understandable as the rule is now well established that not all searches and seizures undertaken without a warrant are unreasonable. The search and seizure of the apartment predicated on the undisputed voluntary consent of Mrs. Pinegar brings it under an exception to the rule a search must rest upon a search warrant. Our review of these principles and supporting authority are set out in our recent case of State v. Halverson, Iowa, 155 N.W.2d 177, 179, 180, filed December 12, 1967, and need not be repeated here.

II. Defendant asserts the evidence discovered when the officers went around to the opposite side of the apartment building

was obtained by illegal search and seizure and therefore inadmissible under Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933. We do not agree.

Cross-examination of Wignall by defendant's counsel (not his present counsel) includes: "Q. Now, this would be a house with a lot, would it be? Is there a lot and some outbuildings that belong with the premises? This home of Alfred's in Lamoni, is it a house? Is there a lot that goes with it? A. I don't know if the lot goes with it or not. Q. You don't know what part of it would be contiguous with the house or not, would you? A. No, I don't know how it is laid out as property. There is this building. It is a long, narrow one. I do know the building is divided into two apartments, the one Al lives in, and one right next to him east is vacant and I believe there is two more. I am not positive of that, and then there is two or three house trailers around there. Q. Did you search the outside of the house before you went in the house? A. Did I search the inside of the house? Q. The outside. A. The outside of the house. I went around the house; yes. Q. Before you went in? A. Oh, yes. Q. Did you ask Donna Pinegar if you had a right to do that, if you had permission to do this? A. No, I did not. Q. You didn't know whether you were on her house lot or not? A. I don't know whose land it is. Q. Did you see any activity or anything that might have led you to believe somebody was trying to get away when you began this search? A. As soon as Ronnie Johnston came walking up and went into the house, we knew there was something up. I figured that." This is the extent of the proof of the officers' location when they observed the window screen on the ground and the footprints leading therefrom.

Thus it appears the evidence fails to establish the officers were on the Pinegar premises when they went around the apartment building in their effort to keep the the rear as well as the front under surveillance until a search warrant was obtained. They were aware Johnston, a suspect who knew a search of the premises was to be made, had returned to the Pinegar apartment. Good police work required his escape and disposition of stolen property be prevented if possible.

 Protection accorded people by the Fourth Amendment in their persons, houses and effects does not extend to observations of open fields or grounds around a residence from property not shown to be a part thereof. Monnette v. United States, Cir. 5, 299 F.2d 847; United States v. Young, Cir. 4, 322 F.2d 443; United States v. Sorce, Cir. 7, 325 F.2d 84; United States v. Romano, Cir. 2, 330 F.2d 566; United States v. Sterling, 244 F.Supp., 534, affirmed, Cir. 3, 369 F.2d 799. The observations made by officers Wignall and Peel did not constitute an illegal search.

III. If we were to assume arguendo the officers' conduct constituted an unreasonable search and seizure, we are not persuaded defendant Neely had standing to invoke the claim. Defendant Neely, Johnston, Tom Pinegar and Barbara Nelson went to the Alfred Pinegar apartment about 5 a. m., January 21, 1966, where they remained most of the day. While there they were engaged in drinking and some of them, including Neely, used drugs. That evening Neely, Johnston and the Pinegar brothers left the apartment in Tom's Ford, drove around southern Iowa and northern Missouri, then returned to Lamoni. Johnston as a witness for the state and Neely so testified.

Johnston said the four then went to Redding where the car was parked in the Abarr station driveway, Tom broke the door window and went inside while the other three remained in the car; Johnston, with Neely, later entered the station while Alfred stood guard. He described how the safe was torn from the wall, loaded in the car, hauled by the four to the Alfred Pinegar apartment in Lamoni where it was broken open.

Neely testified he and Alfred got out of the car in Lamoni when the four returned

to the town and he was trying to find his way back to the Pinegar apartment when he was found at the outhouse of the dwelling south of the Pinegar apartment. Neither of the Pinegars testified.

■ Neely was not present on the premises at the time of the claimed search outside the Pinegar apartment. His residence was in Des Moines. He had no interest in or right to use the premises. He claimed no title or possessory right to any property located thereon. That under these facts defendant Neely had no standing to claim illegal search and seizure see Commonwealth v. Raymond, 412 Pa. 194, 194 A.2d 150, 153; Diaz-Rosendo v. United States, Cir. 9, 357 F.2d 124, 131; United States v. Bozza, Cir. 2, 365 F.2d 206, 223; United States v. Beigel, Cir. 2, 370 F.2d 751, 756; Robinson v. State, Fla.App., 194 So.2d 29, 31; Spinelli v. United States, Cir. 8, 382 F.2d 871, 879; Anno., 78 A.L.R.2d 246.

IV. Defendant argues his motion for directed verdict at the close of all the evidence and reasserted in his motion for new trial should have been sustained since there was insufficient evidence to connect him with the crime charged or to corroborate the testimony of Ronald Johnston, an accomplice. Code section 782.5 provides: "A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Application of this section and the general principles relating thereto are reviewed in two recent cases, State v. Weaver, 259 Iowa 1369, 147 N.W.2d 47, 49, 50 and State v. Gill, Iowa, 154 N.W.2d 722, 724, 725. We briefly note therefrom these applicable rules.

■ Whether there is corroborative evidence is a question of law, but its sufficiency is for the jury.

■ The corroborating evidence may be either circumstantial or direct and need not be of every material fact testified to by the accomplice.

■ The evidence adduced to corroborate an accomplice need not be strong, and any evidence legitimately tending to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient.

There may be a combination of circumstances which entitle the jury to reach the conclusion they corroborate the accomplice's testimony.

■ When considering the sufficiency of the evidence to meet the requirements of section 782.5 each case must be judged on its own facts.

As before pointed out, the evidence is undisputed defendant was an occupant of Tom Pinegar's 1955 Ford from Des Moines to the apartment and later in southern Iowa, northern Missouri and back in Lamoni a very short time before the break-in. The witness who saw the car in Abarr's driveway testified there were three persons in it. This is consistent with Johnston's testimony Tom Pinegar went in first while the other three remained in the car. Shortly thereafter that car was parked near the Pinegar apartment where defendant had earlier entered it. Defendant was found within three to four hundred feet from the car and the stolen safe.

■ We must agree with the trial court's conclusion the corroborative evidence was such to require submission of the question of its sufficiency to the jury.

We find no reversible error and are convinced defendant had a fair trial.

Affirmed.

All Justices concur, except RAWLINGS, J., who concurs in the result.