STATE of Iowa, Appellee,

v.

Harold Wayne CORNWELL, also known as
Rube Cornwell, Appellant.

No. 54504.

Supreme Court of Iowa.

Sept. 9, 1971.

Scalise, Scism, Gentry & Brick, Des
Moines, for appellant.

Richard C. Turner, Atty. Gen., Max A.
Gors, Asst. Atty. Gen., Curtis G. Riehm,
Hancock County Atty., and Richard Ram-
sey, Winnebago County Atty., for appellee.

MOORE, Chief Justice.

Defendant Harold Wayne Cornwell, also
known as Rube Cornwell, was convicted of
larceny of a motor vehicle in violation of
Code section 321.82. He was given a
bench parole from his sentence to a term
not to exceed ten years at the state peni-
tentiary and fined $1000. He has appeal-
ed. We affirm.

I. The first of defendant's two as-
signed errors is that his motion to set aside
the county attorney's information should
have been sustained when made prior to
trial. Although the information was sworn
to by the county attorney as required by
Code section 769.7 defendant argues it was
inadequate as the minutes of testimony at-
tached thereto were not shown to be based
on sworn testimony.

Code section 769.4 provides: "Names of witnesses—minutes of evidence. The county attorney shall, at the time of filing such information, endorse or cause to be endorsed thereon the names of the witnesses whose evidence he expects to introduce and use on the trial of the same, and shall also file with such information a minute of the evidence relating to the guilt of the accused of the offense charged of each witness whose name is so endorsed upon the information."

In State v. Van Klaveren, 208 Iowa 867, 870, 226 N.W. 81, 83 in interpreting this statute (then section 13647, Code, 1927) we quote this from State v. Hueser, 205 Iowa 132, 135, 215 N.W. 643, 644: "The statute does not require that the county attorney shall attach copies of 'sworn minutes' of the evidence to the information". The statutes and our cited cases are squarely against defendant's first contention.

II. Defendant next argues his motion for directed verdict should have been sustained on the asserted ground there was no evidence to corroborate or tend to corroborate accomplices' testimony that defendant did aid and abet in the larceny of the motor vehicle herein involved.

Code section 782.5 provides: "Corroboration of accomplice. A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

This statute has been before this court many times. These general principles applicable to this section are well established.

■ Whether there is corroborative evidence is a question of law, but its sufficiency is for the jury.

■ The corroborating evidence may be either circumstantial or direct and need not be of every material fact testified to by the accomplice.

■ The evidence adduced to corroborate an accomplice need not be strong, and any evidence legitimately tending to connect accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient.

■ There may be a combination of circumstances which entitle the jury to reach the conclusion they corroborate the accomplices's testimony.

■ When considering the sufficiency of the evidence to meet the requirements of section 782.5 each case must be judged on its own facts.

In support of the above summary see State v. Morrison, Iowa, 183 N.W.2d 696, 698; State v. Schlater, Iowa, 170 N.W.2d 601, 603, 604; State v. Gill, 261 Iowa 522, 526, 154 N.W.2d 722, 725; State v. Neely, 261 Iowa 1107, 1114, 156 N.W.2d 840, 844; State v. Theodore, 260 Iowa 1038, 1041, 150 N.W.2d 612, 613, 614. See also 23 C. J.S. Criminal Law section 812.

■ III. From our review of the record we conclude the trial court correctly found there was corroborative evidence. James Cink testified as follows. He had been employed by Winnebago Industries at Forest City, from the summer of 1968 to June 17, 1969 in the shipout department and had many contacts with defendant, a Winnebago motor home franchised dealer in Des Moines who operated under the trade name of Eastown Motors. Defendant on several occasions talked to him about stealing motor homes. Cink had a master key to all Winnebago units. After being assured by defendant he would never be caught and defendant would make it worthwhile, Cink finally agreed to steal and deliver to defendant motor homes of 22, 24 and 27 foot lengths as requested by defendant.

On June 23, 1969 Cink and his brother-in-law, Wayne Green, stole from the Winnebago lot a 24 and 27 foot home but returned the 24 foot as it was low on gas. They drove the 27 foot motor home to Eastown Motors in Des Moines where they delivered it to defendant. Defendant gave Cink $100 and encouraged the men to steal more units. Defendant furnished them a 1964 or 65 blue-green Dodge to return to Forest City so they could steal more motor homes. The record reveals defendant owned such a vehicle and also a Volkswagen which defendant allowed the men to drive on a subsequent occasion.

The following night, June 24, 1969 Cink and Green stole 22 and 24 foot motor homes from the Winnebago lot. They placed paper license plates in each which defendant had furnished. They delivered these vehicles to defendant's lot where they met defendant at about midnight. Defendant again gave the men $100 and furnished them his Volkswagen to return to Forest City. A nearby gas station attendant serviced the Volkswagen which was in the possession of Cink and Green.

Mrs. Cink testified that about 2 a. m. on the night of June 24 she called defendant and was advised Cink was in the lot and ready to leave. Defendant asked her if anything was wrong to which she answered in the negative. She had seen her husband in the blue-green Dodge at their home but was unaware of any larceny.

Wayne Green's testimony was substantially the same as that of Cink. He further testified he on several occasions asked defendant for "money that he figured he had coming as his part in the thefts" but that defendant replied "he still had them". On one occasion Green's sister-in-law, Karen Green, listened on a telephone extension to a conversation between Green and defendant. She had doubted Green's earlier statement he delivered stolen motor homes to defendant. Regarding the telephone conversation Karen testified:

"Q. And what was said? A. Wayne told Rube he wanted his money and Rube said, 'I've still got em'. And Wayne says, 'Well, I want my money in the morning.'

"Q. What did Rube say to that? A. And Rube says, 'I don't have it now, you'll have to wait.' And Wayne said he wasn't going to wait, that if he didn't get his money by morning he was going to go to John K. Hansen (head of Winnebago Industries). And Rube said something about he wouldn't dare because he'd be hanging himself * * *

"Q. All right. A. And Wayne said yes he would, that he definitely wanted his money by morning. And Wayne asked Rube to meet him at his bank, and Rube says, 'What bank?', he says—Wayne said 'Wherever you bank at, meet me there in the morning and you can pay me.' And Rube said, 'I don't bank.' And he laughed. And Wayne says, 'I know you bank, and you better meet me there in the morning.' And Rube said he wasn't meeting Wayne any place, and Wayne says if he didn't he was going to go to John K. Hansen. And Rube said—I can't remember the words, but it was to the effect he would have Wayne taken care of, 'I'll have you blasted' or something like that, 'You'll never make it.' "

When the stolen 22 foot motor home was recovered in Nebraska a windshield decal was on it. The decal, number 1653, came from a unit which a customer had traded to Eastown Motors on June 12, 1969.

Both Cink and Green had entered pleas of guilty to larceny of the 22 foot motor home for which defendant was being tried.

We find no reversible error.

Affirmed.

All Justices concur except MASON, J., who takes no part.