STATE OF IOWA, Appellee, v. SETH SMITH, Appellant.

CRIMINAL LAW:   Course and Conduct of Trial—Discharge of Sick
1   Juror.   An agreement, after the jury has been sworn, to impanel a
    new juror in place of one discharged for sickness does not open the
    door to a renewal of challenges to the other eleven jurors.

EVIDENCE:   Documentary Evidence—Unsigned Writings.   Unsigned
2   writings are admissible when shown to be material, and when a
  · jury question is made as to their authorship.

RAPE:   Corroboration—Degree of Proof.   Whether the facts or circum-
3   stances relied on for corroboration must be proved beyond a reason-
    able doubt, quaere.

CRIMINAL LAW:   New Trial—Temporary Sickness of Juror.   Tem-
4   porary sickness of a juror during the period of deliberations is no
    ground for a new trial.

CRIMINAL LAW:   New Trial—Misconduct of Juror—Use of Magnify-
5   ing Glass.   The use of a magnifying glass by jurors in the exam-
    ination of exhibits does not constitute misconduct.

CRIMINAL LAW:   New Trial—Illustrating Argument.   A juror who
6   conceives and presents to his fellow jurors his own particular man-
    ner or way of illustrating his arguments is not thereby presenting
    or giving consideration to matters aside the record.

Appeal from Warren District Court.—J. H. APPLEGATE, Judge.

APRIL 6, 1923.

REHEARING DENIED NOVEMBER 20, 1923.

THE defendant, having been convicted of rape upon a fe-
male child under fifteen years of age, appeals.—Affirmed.

J. O. Watson and L. D. Teter, for appellant.

Ben J. Gibson, Attorney-general, and John Fletcher, As-
sistant Attorney-general, for appellee.

WEAVER, J.—The defendant is a resident of Marion County,
Iowa. At the date of the alleged offense, he was about 46 years of

age, unmarried, living in the home of his father. The prosecuting witness was then about 13 years of age, living with her parents in the same neighborhood with the defendant. The girl testifies that, in April, 1919, at the solicitation of the defendant, she permitted him to have intercourse with her, and that such act was thereafter repeated on frequent occasions, as often as once a week, until and including January 12, 1920. On the trial, the State was required to elect on which alleged offense it relied for a conviction, and thereupon specified the one last above named, as having occurred on January 12, 1920. The venue was laid in Marion County, in which jurisdiction the parties lived, and where the indictment was found. A trial was had in that county, and a verdict of guilty was returned. On appeal to this court, the judgment was reversed. See *State v. Smith*, 192 Iowa 218. The venue was thereafter changed to Warren County. Upon the second trial, defendant was again convicted; and, his motion for new trial being overruled and judgment entered on the verdict, he again appeals.

I. The first assignment of error argued has reference to the impaneling of the trial jury. It appears that a jury had been selected and sworn, and opening statements had been made by counsel, when court adjourned for the night,

1. CRIMINAL LAW: course and conduct of trial: discharge of sick juror.

before any testimony had been offered or received. On the reassembling the next morning, it happened that one member of the trial panel was sick, and unable to further serve. When this situation was developed, the court announced that an agreement had been made that, to avoid the necessity of selecting an entire new jury, another juror should be called, to take the place of the one excused, the privilege being given to exercise a reasonable number of challenges, not exceeding three on a side. Proceeding to the selection of a new juror to fill the vacancy, defendant's counsel claimed the right to challenge any member of the panel. This proposition was overruled by the court, which held that the right to challenge could be exercised only as to the juror called to fill the vacancy. The defendant excepted to this ruling, and assigns error thereon.

The exception cannot be sustained. The possibility of a trial's being interrupted by the sickness of a juror has been

recognized and provided for by statute, Code Section 5388, where it is said that in such case "a new juror may be sworn and the trial begin anew, *or* the jury may be discharged and a new jury then or afterwards impaneled." By the agreement of the parties and order of the court in the present case, the first of these alternative methods was adopted, and a new juror was drawn, to complete the membership of the panel. Had appellant elected to insist upon the discharge of the entire panel and the selection of a "new jury," the court would undoubtedly have so ordered, and the right of the accused to exercise all his challenges would not have been open to question. By consenting to the first alternative and proceeding to select a single juror, he in effect signified his willingness that the eleven jurors remaining of the original panel, which he had already accepted, should continue to serve, and with the new juror should constitute the new or completed panel. To hold otherwise, and say that an order for the selection of a single juror has the effect to open the door to challenge any or all jurors, including those who have already passed the test of examination upon their *voir dire,* and as to whom the right of peremptory challenge has already been exhausted, would be to render the first alternative or option provided by the statute quite ineffectual. The ruling by the trial court was in strict accord with the statute. The provision that, the jury being thus completed, the trial shall "begin anew," means or implies no more than that, when the panel has been completed, as authorized by the statute, the trial of the issues joined shall proceed to the reconstructed panel, in the same manner and with the same effect as if such jury had been selected originally for such trial. Although the statute provides only that the new juror be sworn, it would, of course, be proper, and perhaps necessary, that, when the vacancy is filled, the reconstructed panel be sworn as a whole to well and truly try the issues; and if any evidence has been introduced before the interruption, it should be retaken or withdrawn. That contingency is not involved in this case, as the juror became sick and was discharged before any evidence was offered; and when the vacancy was filled, counsel made their respective opening statements, and the evidence relied upon by both prosecution and defense was presented, and the trial pro-

ceeded to verdict and judgment in the usual and regular manner. It should also be said that counsel, in claiming or asking the right to challenge jurors once passed or accepted by the defense, made no statement or claim of having discovered any cause therefor which came to his knowledge or notice after his acceptance of the original panel, nor is there any showing of any prejudice to the appellant by the ruling complained of. The only precedent cited which affords any seeming support for the appellant's contention on this point is *People v. Stewart,* 64 Cal. 60. In that case, the trial court denied the right of the defendant to exercise a peremptory challenge of the new juror, and the ruling was held error. With that holding we readily agree. In dismissing the case, however, the California court does use language which lends support to the appellant's contention,—a theory which we cannot adopt, without disregarding our statute.

II. It is next argued that the trial court disregarded the "law of the case," as settled by this court on the first appeal. It is to be observed, at the outset of the consideration of this phase of the appeal, that appellant made no request for any specific instruction to the jury. The trial court's charge, given on its own motion, is very carefully drawn, with a manifest purpose to avoid any just ground for an objection of this character. The criticism thereof by counsel is somewhat difficult to follow; but, in a general way, it may be said that the chief objection relied upon centers about the introduction in evidence by the State of two letters, or notes, designated in the record as Exhibits I and J. The complaining witness testified that, by an arrangement with the defendant, they made use of a certain tile block in a barn, as a place in which to deposit letters and communications passing between them, and she produced and identified two writings, as having been taken by her from said place of deposit shortly after the alleged intercourse on January 12, 1920. These papers were unsigned, and not addressed to anyone by name. It is not necessary to quote them here in full. They are in the nature of a plea or request to some person to protect the writer against some charge of wrong. The general

2. EVIDENCE: documentary evidence: unsigned writings.

effect of the writing is sufficiently indicated by the following excerpts:

"Never tell no one dear. Tell on the boys and let them take what they get from father. Never tell them for it would put me in the pen. Tell them it was Billy that has done it to you and it made him mad because you quit him. * * * You tell them you have told the truth; that Seth has never done anything to you or write notes."

The remainder of the communications is of the same general nature; and if they are shown to have been written by defendant to the prosecuting witness, their admissibility in corroboration of her story of the alleged offense cannot be questioned. It seems to be the position of counsel that this court, on the former appeal, held that these writings were not competent or admissible as corroboration, and that this constituted the law of the case for the purposes of the retrial. But the objection does not fairly reflect our former opinion. It was not there held that the evidence is inadmissible, if sufficiently identified as having been written by defendant to the prosecuting witness. The error there committed was in the admission of incompetent evidence to establish such identification. For example, the girl's mother was permitted to testify to the story told her by her daughter as to the authorship of the letters. This error was avoided on the second trial; and if the record shows any substantial evidence tracing such authorship to the defendant, the court did not err in submitting the issue of corroboration to the jury. That there was such evidence, we think is very clear. There were identified specimens of the genuine written signatures of the defendant, for comparison with the disputed letters, and several expert witnesses expressed the opinion that they were all written by the same hand. There was also evidence to the contrary, but the issue was for the jury. If these letters had been signed by defendant's name, and the genuineness of the writing or signature had been admitted, the competency of the evidence would be perfectly apparent. That such identification is shown only by circumstantial evidence does not affect its admissibility.

III. It is further objected that the trial court erred in failing to tell the jury that corroboration necessary to justify a

verdict of guilty must be established beyond a reasonable doubt.
Without committing ourselves to the soundness
of the general abstract proposition that, where
corroboration is necessary to a conviction for
crime, the fact or circumstance relied upon for such corroboration must be proved beyond a reasonable doubt, we hold that the assignment of error here discussed is not sustained by the record in this case. In the first place, even if the rule went to the extent claimed for it by counsel, the court did instruct the jury substantially in accord with appellant's theory, as applied to the instant case; and no request was made for additional or more specific direction to the jury. The storm center of counsel's attack upon the court's charge is that portion thereof which relates to the disputed letters, Exhibits I and J. Referring thereto in Paragraphs 12 and 13½ of the instructions, the court, having said that this evidence was offered by the State as matter of corroboration, then proceeds as follows:

3. RAPE: corroboration: degree of proof.

"Before you would be authorized to consider the contents of said Exhibits I and J, the proof with reference to said exhibits must satisfy you beyond a reasonable doubt that the defendant wrote said exhibits, and that he wrote them for the prosecuting witness, or to her, and that she came into possession of said exhibits. You are further instructed that, if you find from the evidence in this case, beyond a reasonable doubt, that the defendant did, in fact, write said exhibits, then it will be proper for you to consider the contents of said exhibits, in so far as they may aid you in determining whether or not the defendant is guilty of the crime charged in the indictment in this case, at the time and at the place limited for your consideration under these instructions. * * * If, under the evidence with reference to the writing contained in Exhibits I and J, you find beyond a reasonable doubt that defendant wrote said exhibits, and that he wrote them for or to the prosecuting witness, and with the intention that they should by some means come into her possession, then and in such event it is proper for you, in connection with the other evidence submitted upon this trial, to consider said exhibits, in so far as they may in your judgment corroborate or tend to corroborate the testimony of the prosecuting witness with reference to the alleged act of sexual intercourse

at the barn near the Pleasant Grove schoolhouse, on January 12, 1920. However, unless you do find all of said matters beyond a reasonable doubt, with reference to the authorship of said Exhibits I and J, you should reject them as evidence upon said subject; and in such event it will then be your duty to determine whether other evidence submitted upon this trial corroborates and strengthens the testimony of the prosecuting witness in such way as to single and point out the defendant beyond a reasonable doubt, as the party who had sexual intercourse with the prosecuting witness at said time and place, if you find that someone did have sexual intercourse at said time and place with said prosecuting witness.''

Even upon appellant's theory of the law, these instructions are, as we have said, not open to just criticism; neither are they inconsistent with the law as settled upon the first appeal. While upon the subject of corroboration, we may here add that the sufficiency of the corroboration does not depend alone on the exhibits referred to; for there is ample evidence of other alleged facts and circumstances to take that issue to the jury.

IV. While numerous exceptions were saved to rulings upon matters of evidence, very few have been argued. Of these, one relates to the act of the court in striking out evidence to the effect that the parents of the prosecuting witness claimed to have become worried or suspicious over the attention paid the girl by the defendant, as early as December 1, 1919, but that they did not interfere or attempt to break off the alleged intimacy until early in January, 1920. Particular complaint is made at this point because defendant's counsel, in his opening statement, had mentioned the alleged fact and relied upon it as affecting the strength of the State's case, and it is claimed that the ruling of the court ''deprived defendant of the benefit of his theory.'' It would hardly seem necessary to say that the alleged fact had no relevant bearing upon the question of defendant's guilt or innocence, and the further fact that counsel saw fit to make reference thereto in his opening statement could not operate to render it material or competent.

Further complaint is made that the court erred in permitting proof of a letter or note written to the defendant by the girl, who, it was said, put it in the pocket of her father's coat,

mistaking the garment for a similar one belonging to defendant. With respect to this ruling, it is sufficient to say that the court withdrew this evidence from the jury, with an instruction to disregard it entirely, in deliberating upon the verdict. The error, if any, in its introduction was not of such serious character that we may not presume that it was cured by the court's correction.

V. We shall indulge in no general review of the testimony as to the revolting details of the alleged crime. It is enough to say that the evidence fully sustains the verdict. The only room for argument is upon the question of the veracity of the witnesses—a question which is within the exclusive province of the jury.

VI. The verdict was returned on January 17, 1922, and time was extended for presenting motion for new trial. The motion was filed February 1, 1922. In support thereof, appel-

4. CRIMINAL LAW: new trial: temporary sickness of juror.

lant makes the several points to which we have already given attention, and in addition attacks the verdict upon new grounds, to which we now refer. It is claimed that, during the deliberation upon the verdict, one of the jurors, Andrew Blair, was taken sick, and was in such physical and mental condition that he was unable to give careful and conscientious attention to the evidence or to the instructions of the court, and was at times asleep, and took no part in the deliberations; and that the verdict does not express the deliberate conviction of said juror. It is further alleged that another juror took with him into the jury room a magnifying glass, which was used by the jurors in examining the exhibits in evidence, and that said juror also had and displayed a notebook, in which he had made minutes of the testimony; that other jurors had and displayed checks and other writings of their own, to illustrate or show variations or similarities in the handwriting of the same persons; and that such alleged misconduct "helped a number of jurors to believe" that defendant had written Exhibits I and J. Affidavits of several of the jurors were presented in support of the motion. The juror Blair deposed to the fact of his sickness and of his unfitness to deliberate upon the verdict, but concedes that he was better in the morning, and went to breakfast with the

jurors, and was present with the others in the court when the verdict was read. He now says that he did not then believe the defendant guilty. Another juror, one Hagen, deposes that he too was sick with headache, but his fellow jurors refused his demand that he be allowed to go to bed; that he remained with the jury all night, and until the verdict was returned, at 9:30 A. M. the next morning. He too now expresses his dissent from the verdict, and emphasizes it by the plaintive statement:

"I am satisfied, if I had an opportunity to have some sleep during the night, instead of deliberating the entire night, as I was made to believe I was compelled to do, I never would have voted as I did."

The various affidavits in support of the motion to set aside the verdict were stricken, upon the State's objection thereto, and the motion for new trial denied. Were new trials to be awarded upon showings of this character, few, if any, verdicts could stand the test. We can conceive of the possibility that, where a juror dies, or is clearly shown to have become insane or totally incapacitated, pending deliberation upon a verdict, it would result in a mistrial. But nothing approaching such a vitiating circumstance is here shown. It does appear that the juror Blair did have an attack of sickness during the night, and for a time was evidently not in condition to take part in the deliberations; but the sickness appears to have been quite temporary, and he was sufficiently recovered to go to his breakfast with his fellow members, and thereafter accompanied the panel into court, where the unanimous verdict was delivered and received, without protest on his part. The affidavit of the juror Hagen is even less meritorious. Its insufficiency is too apparent to call for any discussion.

The act of another juror in producing and using a magnifying glass in examining the exhibits is not misconduct. If a juror should lend his spectacles to his fellows, to aid them in seeing more clearly an exhibit which has been submitted to them by the court, or to read the court's instructions, his courtesy violates no rule of law, nor does it afford any reason for questioning the integrity of the verdict. True, a verdict is to be found upon consideration of the evidence intro-

5. CRIMINAL LAW: new trial: misconduct of juror: use of magnifying glass.

duced on the trial; but it is not competent for the court to inquire into or review the reasoning or arguments employed by the jurors in reaching their conclusion.

Counsel argue that the jurors improperly considered matters not in evidence. This has reference to the fact that certain members are said to have produced from their pockets checks and letters, to illustrate their arguments or views upon the value of the evidence which was admitted, relating to the alleged identification of the writing on the disputed exhibits. It cannot fairly be said that this violates the rule to which we have referred, against the introduction into the jury room of additional or other evidence not produced on the trial. A juror is not forbidden to consider and pass upon the evidence in the light of common experience and common observation. Discussion and deliberation in the jury room would be an idle form, if jurors were bound to refrain from illustrating or emphasizing their views by reference to any matter or thing which they have found to be true or false in their individual experience; and if verdicts were to be held vitiated thereby, the jury system would better be abandoned altogether. The showing made in this case reveals no misconduct on the part of the jury, and the trial court did not err in so ruling.

In conclusion, we may say that we do not overlook the inherent difficulties under which a defendant in such a case labors. Nor do we think that these handicaps have been disregarded or unduly minimized by us or by the trial court. The defendant has been twice tried and twice convicted, once by a jury of his own county and again by a jury of another county, presumably unaffected by local excitement or prejudice. The court kept the trial well within the settled rules of law and procedure, and, as we have seen, the verdict is well supported by the evidence. We cannot, upon this record, interfere with the result, and the judgment appealed from must be—*Affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.