STATE of Iowa, Appellee,

v.

Ronald Leroy SCHLATER, Appellant.

No. 53144.

Supreme Court of Iowa.

Sept. 5, 1969.

Harold G. DeKay, Atlantic, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Robert D. Nelson, County Atty., Audubon, for appellee.

MASON, Justice.

The Audubon County grand jury returned an indictment charging Ronald Leroy Schlater with breaking and entering with intent to commit larceny contrary to section 708.8, Code, 1966, by aiding and abetting another in breaking and entering the Asberry Feed Store in Exira on or about October 21, 1967.

Following a plea of not guilty the matter proceeded to trial by jury which returned a verdict of guilty. Motion for new trial and to set aside the verdict was overruled and defendant was sentenced to imprisonment in the men's reformatory for a term not to exceed ten years.

We deem it advisable to set out the provisions of Code section 688.1:

"Distinction between principal and accessory. The distinction between an accessory before the fact and a principal is abrogated, and all persons concerned in the commission of a public offense, whether they directly commit the act constituting the offense, or aid and abet its commission, though not present, must hereafter be indicted, tried, and punished as principals."

From this final judgment defendant appeals assigning as error refusal of trial court to order the county attorney to produce statements made by witnesses, if any, and under his control for examination by defendant after the direct testimony of the witness had been given, particularly regarding a lie detector test given the accomplice, Joseph Oppold; refusal to order county attorney to produce a sworn statement of Tom Green made before the grand jury to be offered into evidence by defendant on his behalf. It is contended there was insufficient corroboration of the accomplice's testimony and defendant was denied due process and fair trial by suppression of Green's statement made before the grand jury and the lie detector test.

I. Joseph Oppold, an inmate at the men's reformatory, testified as a State's witness that while he was living in an apartment in Atlantic, he, Tom Green and defendant planned a breakin of Asberry's Feed Store the night of October 20. He maintains defendant told them the best way to get in and where he would pick them up afterwards. The witness said the three left the apartment after midnight with defendant driving the get-away car, a 1963 dark blue Chevrolet belonging to a Steve Rasmussen.

They drove by the feed store in the west end of Exira to look the situation over, through the town to locate the police, then back in front of Asberry's and on west. All three returned to the store, drove clear around it, into the yard and then down to the sewer bridge road where witness and Green got out of the car. The two went behind the store about 150 feet from the car, broke a panel out of the back window and entered the store, taking money from a cash register and Coke machine, a large piggy bank and a pair of cowboy boots. They waited in a nearby cornfield for defendant to pick them up. When he did defendant turned onto sewer bridge road again where Oppold threw away the fillers from the

boots. They arrived at Oppold's apartment in Atlantic about 12:30 or 12:45 a. m. After the loot was divided defendant and Green left for home about 1 a. m.

Robert Asberry testified that as he drove over the sewer bridge road on the way to work about 6:15 a. m. October 21 he noticed a filler from a Nocana brand boot which he stocks. When he arrived at the feed store he found the cash register and pop machine had been broken into, the piggy bank had disappeared. He immediately called the sheriff and Mrs. Asberry, told her not to let anyone cross the sewer bridge road so the tracks might be maintained. Asberry described tire tracks found in the store area, the broken window, the store interior and fillers used in the missing boots.

He said he pointed out the tire marks near the store and similar tracks on the sewer bridge road to the sheriff.

Asberry and the sheriff drove to defendant's home, checked the front and rear tires and tread pattern of the 1963 tudor Chevrolet Asberry had seen defendant driving prior to the night of the breakin. In his opinion this tread pattern matched his earlier description of the tracks near the store and on the bridge road.

Jack Hilsabeck, Audubon County sheriff, said he drove to Asberry Feed Store in Exira October 21 in response to a telephone call. He observed a broken window, inspected the store interior and observed tire tracks in the yard and in front of the feed store. He and Asberry then went to the bridge on the sewer road where Asberry pointed out tire tracks. They then drove to the home of defendant's father, observed a 1963 dark blue Chevrolet which the sheriff had seen defendant driving at various times during the summer. Hilsabeck testified without objection that, based on his inspection of these tires, the tire pattern was similar to that of the tracks around the store and on the road by the bridge.

Francis Chantry, an Atlantic policeman, and Lloyd Wolfe, Exira marshall, both ac-

quainted with defendant, testified that while parked and talking they saw defendant driving a 1963 dark blue Chevrolet in Atlantic between 1 and 3 a. m. October 21, 1967. He was accompanied by another person. Chantry remarked to Wolfe, "There goes Schlater." Wolfe replied, "Yeah that's him." The point where the two officers saw defendant is about 13 miles from the feed store. Neither was then aware there had been a breakin at Asberry's store. When Wolfe returned to Exira about 4:30 a. m. he noticed there weren't any lights in the feed store.

■ II. Defendant challenges the court's ruling in submitting to the jury as a fact question the sufficiency of the evidence to corroborate the testimony of Oppold, an accomplice.

Code section 782.5 provides:

"Corroboration of accomplice. A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

In State v. Neely, Iowa, 156 N.W.2d 840, 844, we summarized the general principles applicable to this section based on authorities reviewed in State v. Weaver, 259 Iowa 1369, 1373, 147 N.W.2d 47, 49–50, and State v. Gill, Iowa, 154 N.W.2d 722, 725:

"Whether there is corroborative evidence is a question of law, but its sufficiency is for the jury.

"The corroborating evidence may be either circumstantial or direct and need not be of every material fact testified to by the accomplice.

"The evidence adduced to corroborate an accomplice need not be strong, and any evidence legitimately tending to connect the accused with the commission of the crime and thereby lend support to the credibility of the accomplice is sufficient.

"There may be a combination of circumstances which entitle the jury to reach the conclusion they corroborate the accomplice's testimony.

"When considering the sufficiency of the evidence to meet the requirements of section 782.5 each case must be judged on its own facts."

With these rules in mind we turn to the evidence.

Oppold described the planning and commission of the crime, the route taken by the three participants after leaving Atlantic until their return to his apartment, the items taken from Asberry's and specified the time Green and defendant left for home. Asberry testified as to his finding the boot filler, the tire marks in the vicinity of the store and on sewer bridge road, an area in which Oppold said they traveled. Asberry inspected the tire tread on the blue Chevrolet he had seen defendant driving earlier in the summer. This was the same car Oppold said defendant drove the early morning of October 21. In his description of the store interior Asberry gave an account of the items missing which corresponded with the items Oppold admitted taking.

The sheriff's testimony relating to his examining the tire marks around the feed store and on the sewer bridge road, inspecting the Chevrolet tires and noticing defendant driving this particular automobile on many earlier occasions legitimately tended to connect defendant with the commission of the crime.

Chantry and Wolfe both said they saw defendant in Atlantic sometime between 1 and 3 a. m. October 21, 1967, driving a blue Chevrolet which corresponded with that described by Oppold, Asberry and the sheriff. Their testimony was further corroboration of Oppold's version of the time defendant and Green left his apartment and defendant's possession of the Chevrolet on October 21, and lent support to his credibility.

The court did not err in submitting to the jury as a fact question the sufficiency of this evidence to meet the statutory requirement.

III. Defendant asserts in his third assignment the trial court erred in overruling his motion to set aside the jury verdict and dismiss the case. To the extent this motion is based on the contention the corroborating evidence was insufficient to raise a jury question it is without merit.

IV. In another assignment defendant contends the court erred in refusing to order the county attorney to produce Tom Green's sworn and signed statement made before the Audubon County grand jury so it might be offered in evidence by defendant. He argues the State thus suppressed evidence favorable to him resulting in denial of a fair trial and due process.

The record shows that Tom Green was subpoenaed before the grand jury which returned the indictment against defendant. Green's name was not listed as a witness examined by the grand jury when the indictment was returned and the minutes attached thereto did not reflect his statement. Green was out of the state and did not testify at trial.

■ Defendant called the foreman of the grand jury which returned the indictment against him. The State's objection to this procedure was sustained. Defendant then made an offer of proof that if permitted, the witness would have testified that Tom Green appeared before the grand jury, was sworn, his evidence taken and reduced to writing. The facts contained in defendant's offer of proof are not disputed but do not present a situation contemplated by section 771.24 for disclosing grand jury proceedings when in the opinion of the court disclosure is necessary in the administration of justice. The State's objection was properly sustained.

Code section 772.3 provides:

"Names of witnesses indorsed. When an indictment is found, the names of all witnesses on whose evidence it is found must be indorsed thereon before it is presented in

the court, and must be, with the minutes of the evidence of such witnesses, presented to the court by the foreman in the presence of the grand jury, and all of the same marked 'filed' by the clerk, as provided in the chapter relating to the duties of the grand jury, and shall remain in his office as a record."

However, "we have held repeatedly that the law does not require the indorsement on an indictment of the name of a witness appearing before the grand jury, if, in their opinion, the testimony given was immaterial. Only the names of the witnesses on whose testimony the indictment is based need be indorsed thereon. * * * [Citing authorities]." State v. Stump, 254 Iowa 1181, 1198, 119 N.W.2d 210, 220. See also State v. Miller, 95 Iowa 368, 372, 64 N.W. 288, 290, and State v. Lewis, 96 Iowa 286, 292–293, 65 N.W. 295, 297.

Nor does Code section 771.13 tend to support defendant's contention. It provides:

"Evidence returned and filed. When an indictment is found, all minutes and exhibits relating thereto shall be returned therewith and filed by the clerk of the court."

■ As claimed by the State Green's statement was not presented to the grand jury in support of the indictment against defendant nor did the State attempt to offer such statement in evidence. Of course, if the prosecution had attempted to use the statement during the trial as substantive evidence in support of the charge against Schlater it would have been objectionable as hearsay. See in support State v. Campbell, 213 Iowa 677, 682, 239 N.W. 715, 718.

■ The court overruled defendant's proffer and refused to order the county attorney to produce Green's statement because the grand jury in failing to consider Green's testimony as material did not in effect suppress any evidence favorable to defendant except such as tends to show an alibi and which defendant knew was available from the day the offense was committed. We agree.

During the colloquy between the court and counsel Green's statement was handed to the court who went over it in detail with defendant's counsel. In the statement it appeared that defendant's present counsel had also been counsel for Green when he appeared before the grand jury. In the statement Green said he knew nothing about the breakin at Asberry's Feed Store or who participated. He did say he and Schlater drove to Omaha the night of October 20, leaving about 7:30 in a 1963 dark blue Chevrolet registered to Rasmussen. In Omaha they went to the Twins Bar where they stayed until 2 a. m. The only one he recalled seeing was a waitress Schlater knew. They did not go through Atlantic in returning to Exira about 4 a. m. In the statement Green related how he became acquainted with the fact Asberry's had been broken into.

The court then announced it had read the statement practically verbatim and nothing had been suppressed. He offered to permit defendant's counsel to read the statement if he had any doubt the court's statement was other than true.

If the facts recited in Green's statement were true, defendant knew since October 20, 1967, that he and Green were together that night; that they drove to Omaha in a Chevrolet returning to Exira about 4 a. m. The state did not suppress or conceal any evidence "exonerative or helpful to the defense" by not returning Green's statement with the indictment.

The most that can be claimed for his statement is that it is evidence of alibi. But defendant did not file notice of alibi as required by Code section 777.18. Under a plea of not guilty a defendant may take the witness stand and testify to all material and relevant matters. He may testify not only that he did not commit the act but also that he was so far away and at such a specified place he could not have been present at the scene of the crime. If he voluntarily elects to go further and call witnesses to testify in support of his alibi, he must then give notice required by statute.

State v. Stump, supra, 254 Iowa at 1194, 119 N.W.2d at 218.

■ Under these circumstances even Green's testimony from the witness stand would not have been admissible on the issue of defendant's claim of alibi.

As we understand, defendant contends the fact the court made him aware of the contents of Green's statement before the grand jury does not reach the basis of his motion. Defendant does not contend the information contained in Green's testimony before the grand jury was necessary to properly prepare for trial or to assure him a fair trial but maintains he had a right to require the State to produce this statement so defendant might introduce it as substantive evidence for jury consideration on his claim of alibi. This statement was not Green's deposition taken under the provisions of Code section 769.19 and defendant fails to make clear its competency for any purpose. It is hearsay and defendant suggests no exceptions to that rule.

The court did not err in its ruling.

V. Insofar as defendant's motion to set aside the jury verdict and grant a new trial is based on the contention considered in Division IV, supra, it is without merit.

As tending to support the conclusion reached in Divisions IV and V, see State v. Washington, Iowa, 160 N.W.2d 337, 338–340, where defendant's attempt to introduce a certified transcript of testimony of a State's witness given at preliminary hearing when witness was beyond the court's jurisdiction at time of trial was rejected.

VI. In his other assignment defendant asserts the court erred in refusing to order the State to produce statements made by witnesses, if any, under its control for examination by defendant.

■ During the trial defendant filed motions demanding any statements made or adopted by the witnesses Asberry and Wolfe. The motions were overruled but defendant does not argue the validity of this ruling in support of this assigned error. We therefore consider his contention of any claimed error in this regard waived.

His argument in support of this assignment is directed particularly to the court's refusal to order the county attorney to produce the results of a lie detector test allegedly given Oppold. His motion made at the conclusion of Oppold's testimony was a demand "for a copy of any statement made or adopted by him pertaining to this case on trial".

In his motion made at the conclusion of the State's evidence defendant made no reference to the results of any lie detector test alleged to have been given Oppold. In motion made for new trial defendant asserted for the first time he had been deprived of a fair trial by the court's refusal to order the results of the lie detector test produced. At no point in the colloquy referred to in Division IV did defendant even indicate he was seeking a report on a lie detector test. At one point the court told counsel defendant didn't say what documents he wanted. He replied he didn't know. Existence of such a report was never brought out during proceedings in the trial court until defendant's motion for new trial.

Defendant contends here he was entitled to the report of results of this test for use in cross-examination of Oppold.

"* * * [I]n Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, [the Court] decided that the defense in a federal criminal prosecution was entitled, under certain circumstances, to obtain, for impeachment purposes, statements which had been made to government agents by government witnesses. These statements were therefore to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony, and *if a demand had been made for specific statements* which had been written by the witness or, if orally made, as recorded by agents of the Government." (Emphasis

supplied). Palermo v. United States, 360 U.S. 343, 345–346, 79 S.Ct. 1217, 1221, 3 L.Ed.2d 1287, 1291. This case gave rise to the so-called "Jencks" Act, 18 U.S.C.A. section 3500. See State v. Galloway, Iowa, 167 N.W.2d 89, 92, where portions of this Act are set out.

We quote again from Palermo v. United States, supra, 360 U.S. at 350–353, 79 S.Ct. at 1223–1225, 3 L.Ed.2d at 1294–1296:

" * * * One of the most important motive forces behind the enactment of this legislation was the fear that an expansive reading of Jencks would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness. * * * [I]t was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations. * * *.

" *   *   *   *   *   *

" * * * It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. * * * It is clear from the continuous congressional emphasis on 'substantially verbatim recital,' and 'continuous, narrative statements made by the witness recorded verbatim, or nearly so * * *,' see Appendix B, post 79 S.Ct. page 1228, that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. * * Since we feel the statutory standard has guiding definiteness, it would be idle to attempt a minute enumeration of particular

situations to which it is to be applied. * * Final decision as to production must rest, as it does so very often in precedural and evidentiary matters, within the good sense and experience of the district judge guided by the standards we have outlined, and subject to the appropriately limited review of appellate courts."

As bearing on the trial court's discretion in this matter see United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 533, 21 L.Ed.2d 537. We do not have the report before us but it is fair to assume that it is "the product of the investigator's selections, interpretations, and interpolations".

We are considering a factual situation where defendant asserts he proposes to use the report for impeachment, not one where he claims the material contained therein was necessary to properly prepare for trial or afford him complete and intelligent assistance of counsel as was the contention in State v. Eads, Iowa, 166 N.W.2d 766, and State v. Redding, filed July 24, 1969, Iowa, 169 N.W.2d 788.

How defendant proposes to lay a proper foundation for use of this statement in his attempt to impeach Oppold is not clear since "we have never held and do not now hold that the results of such a test [lie detector] are admissible in the absence of consent." State v. Galloway, Iowa, 167 N.W.2d 89, 94–95. See also State v. McNamara, 252 Iowa 19, 104 N.W.2d 568, particularly Division IV thereof.

■ Under the circumstances the trial court did not err in overruling defendant's motion for new trial based on this contention.

We find defendant was denied neither a fair trial nor due process. The cause is

Affirmed.

All Justices concur.