**STATE of Iowa, Appellee,**

v.

**Richard Wallace HOUSTON, Appellant.**

No. 55494.

Supreme Court of Iowa.

July 3, 1973.

David P. Miller, Davenport, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., Edward N. Wehr, County Atty., Davenport, and Thomas G. Schebler, Asst. County Atty., Davenport, for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant was convicted in district court of burglary without aggravation, and sentenced as an habitual criminal under the provisions of § 747.5, The Code. He appeals and we affirm.

Defendant asserts trial court erred in permitting a witness to make an in-court identification based on a suggestive identification at a police station, in overruling his new trial motion grounded on jury misconduct, and in denying him due process and a fair trial.

I. *Issue of identification.* State's witness Kerns was a visitor in a house adjoining the burglarized home in Davenport, Iowa. About 11:30 P.M., December 13, 1971, he saw two men carrying a stereo set toward a white van truck parked in the street. Those two men escaped when he dashed toward the van. Observing a third man hiding in the truck, Kerns attempted to open the passenger-side door. The occupant reached over, locked the door from the inside and told Kerns " * * * to go away and leave him alone, he wasn't bothering anybody." Kerns later testified he was then 30 to 48 inches from the occupant who was illuminated by an outdoor gas light and a street light.

There ensued a wild chase through Davenport in which Kerns pursued the white van in his automobile. After the van stopped near a hotel Kerns again observed the driver, at a distance of less than 100 feet. Within a short time police found

defendant, record owner of the van, at a tavern five or six blocks away. Kerns was called to the police station at about 2:00 A.M. and in a one-man show-up identified defendant as the man he chased. At some prior time one photograph of defendant was shown to him by the police.

December 29, 1971, defendant's then counsel filed a motion to suppress any in-court identification of defendant by Kerns, on the ground it would necessarily be based on an illegal and unnecessarily suggestive police station line-up. January 21, 1972, trial court by order held the motion premature and preserved defendant's right to voir dire the witness prior to any in-court identification. After jury selection on February 28, 1972, defense trial counsel conducted a voir dire examination of Kerns, who unequivocally testified he could then identify defendant solely from his observations on the night of the burglary, disregarding any of the incidents at the police station. The motion to suppress was overruled.

The next morning, before the State presented its evidence, defendant by oral motion in limine requested trial court to instruct the county attorney to ask no questions of Kerns or any other witness relating to the police station identification procedures participated in by Kerns. This motion was sustained as to direct examination but not as to re-direct if the defense opened up the subject on cross-examination.

The subsequent in-court identification of defendant by the witness Kerns, on the basis of his observation of him on the night of the burglary, came in without objection. It is questionable whether the alleged error was preserved for review. Compare United States v. Mills, 434 F.2d 266 (8 Cir. 1970), cert. denied, 401 U.S. 925, 91 S.Ct. 908, 27 L.Ed.2d 828 (1971) and State v. Hinsey, 200 N.W.2d 810 (Iowa 1972) with State v. Evans, 193 N.W.2d 515 (Iowa 1972) and Lessenhop v. Norton, 261 Iowa 44, 153 N.W.2d 107 (1967).

We need not turn this case on that technical ground, however, because a more basic rule applies. Assuming there was an illegal identification procedure used prior to trial, the in-court identification testimony is admissible if the State proves by clear and convincing evidence the in-court identification had an independent origin. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); State v. Jones, 193 N.W.2d 509 (Iowa 1972); State v. Essary, 176 N.W.2d 854 (Iowa 1970); State v. Wisniewski, 171 N.W.2d 882 (Iowa 1969); see Kirby v. Illinois, 406 U. S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972).

On this record trial court could have concluded there was clear and convincing proof the in-court identification of defendant by Kerns had an untainted origin in Kerns' observations made prior to any police station identification. We find no merit in this assignment of error.

■ II. *Issue of jury misconduct.* Defendant's motion for new trial, grounded solely on jury misconduct, was overruled by trial court. As developed by three jurors' affidavits attached to the motion, during evening deliberations the jury on several occasions turned off the lights and made an effort to determine nighttime visibility while looking through window glass. This activity related to testimony of the witness Kerns. The jury verdict was returned in approximately six and one-half hours, which included a dinner hour. Upon being polled, each juror acknowledged the verdict.

■ Trial court has broad discretion in determining whether evidence of claimed jury misconduct justifies a new trial. State v. Jackson, 195 N.W.2d 687 (Iowa 1972); Rancho Grande, Inc. v. Iowa State Highway Com'n, 261 Iowa 861, 156 N.W. 2d 293 (1968). Trial court's holding will not be set aside on appeal except upon showing an abuse of such discretion.

State v. Little, 164 N.W.2d 81 (Iowa 1969); 58 Am.Jur.2d, New Trial § 79, p. 270; 66 C.J.S. New Trial § 201(b)(2), pp. 491–494.

To justify a new trial for jury misconduct it must appear (independently of what jurors might later say) the misconduct was calculated to, and probably did, influence the verdict. Fischer, Inc. v. Standard Brands, Inc., 204 N.W.2d 579 (Iowa 1973); Townsend v. Mid-America Pipeline Company, 168 N.W.2d 30 (Iowa 1969). Historically, we have considered such situations with a bemused but limited tolerance for the ingenuity of jurors and the realization a rigid approach would result in interminable litigation. See State v. Jackson, supra (discussion of defendant's prior conviction for murder); Townsend v. Mid-America Pipeline Company, supra (three jurors drove past condemnee's farm); State v. Little, supra (several jurors unofficially visited scene of defendant's arrest); Fordyce v. Cappel, 257 Iowa 763, 133 N.W.2d 664 (1965) (jurors discussed existence of auto insurance); Fagen Elevator v. Pfiester, 244 Iowa 633, 56 N.W.2d 577 (1953) (jurors read aloud from "The Iowa Drivers' Guide"); State v. Phillips, 212 Iowa 1332, 236 N.W. 104 (1931) (jurors tasted liquors introduced into evidence in a liquor nuisance case); State v. Smith, 196 Iowa 1003, 193 N.W. 418 (1923) (juror furnished magnifying glass to examine exhibits).

One issue in State v. Smith, supra, was the identification of writing on disputed exhibits. During deliberations several jurors produced from their pockets checks and letters to illustrate their arguments or views upon the value of the evidence which had been admitted. What this court said, 196 Iowa at 1012, 193 N.W. at 422–423, is pertinent here:

"It cannot be fairly said that this violates the rule to which we have referred against the introduction into the jury room of additional or other evidence not produced on the trial. A juror is not forbidden to consider and pass upon the evidence in the light of common experience and common observation. Discussion and deliberation in the jury room would be idle form if jurors were bound to refrain from illustrating or emphasizing their views by reference to any matter or thing which they have found to be true or false in their individual experience, and if verdicts were to be held vitiated thereby the jury system would better be abandoned altogether."

In the case *sub judice* trial court found there was no reasonable probability the jurors' alleged misconduct influenced the verdict or prevented defendant from having a fair trial. It does not clearly appear this was an abuse of discretion. We hold this assigned error to be without merit.

III. *Issue of due process and fair trial.* Lastly, in a dragnet type assignment of error, defendant claims he was denied due process and a fair trial. We have examined the several specific complaints upon which this assignment is grounded and have found most to be of no substance or already firmly settled by our prior decisions.

On direct examination State's witness Kerns testified when he telephoned the police after the chase he described defendant as a tall, slender man with a protruding face and greased black hair, wearing a dark jacket and slim pants. He gave them the license number of the van and its location. Before cross-examination defense counsel asked the county attorney if he had a statement from Kerns. According to the record, "The County Attorney said he did not, but it was obvious that in any police investigation the police officers did ask questions and the substance of this was contained in a police report."

Defense counsel requested trial court's permission to examine the "reports given by Mr. Kerns to the Davenport Police Department * * *." Trial court examined the police report in camera and found "nothing * * * [to] indicate Kerns

gave a written statement of any kind or a statement * * * inconsistent with the testimony already given * * *." He denied defendant's request. Trial court stated the defense could subpoena anything it needed, but whether it could be used would be subject to rulings made at that time.

In State v. White, 260 Iowa 1000, 151 N.W.2d 552 (1967) we said a defendant is not entitled to unrestricted examination of police records. We are not confronted here with the situation in State v. Eads, 166 N.W.2d 766 (Iowa 1969), where we held trial court should have rejected defendant's pre-trial demand for copies of police reports for use in trial preparation and to afford him better assistance of counsel. Pre-trial motions for claimed exculpatory statements in police files were denied in State v. Aossey, 201 N.W.2d 731 (Iowa 1972) and State v. Niccum, 190 N.W.2d 815 (Iowa 1971).

Nor is this case comparable to State v. Mayhew, 170 N.W.2d 608 (Iowa 1969), on appeal after remand, 183 N.W.2d 723 (Iowa 1971), where demand was made for the written investigation report filed by the policeman being cross-examined and we held trial court should make an in camera determination, in presence of counsel, whether any part was germane to the direct examination of the witness. We there said if trial court determined it was germane the report should be furnished defendant's counsel for possible impeachment use, and in any event if court's ruling was adverse to defendant the report should be preserved and certified to this court if defendant appealed from such holding.

Defendant in this case does not claim access to the police report because it is exculpatory or a verbatim, signed or adopted statement of the witness. The basic distinction between a statement made by a witness and an imprecise summary of what another understood him to say has been drawn in both federal and Iowa cases. See Palermo v. United States, 360 U.S.

343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); State v. Schlater, 170 N.W.2d 601 (Iowa 1969). Several of our cases have approved the federal Jencks Act procedure for determining defendant's right to see statements of witnesses. See State v. Schlater, supra; State v. Mayhew, supra; State v. Galloway, 167 N.W.2d 89 (Iowa 1969).

In State v. Schlater, supra, we specifically treated the distinction above referred to, again following criteria laid down in *Palermo* and in the federal statute, 18 U.S.C. § 3500. The true test is whether the statement is the witness' own, rather than the product of the investigator's selections, interpretations and interpolations. It must be shown, unless there is direct evidence the witness prepared, signed or adopted the statement, that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so.

In *Schlater* we approvingly quoted the following from Palermo v. United States, 360 U.S. at 353, 79 S.Ct. at 1225, 3 L.Ed.2d at 1296:

"Final decision as to production must rest, as it does so very often in procedural and evidentiary matters, within the good sense and experience of the district judge guided by the standards we have outlined, and subject to the appropriately limited review of appellate courts."

Similarly, in State v. White, supra, 260 Iowa at 1009, 151 N.W.2d at 557, we held trial court had considerable discretion, subject to review for abuse, in determining what, if any, part of police records should be disclosed to defendant's counsel. Rejection of a dragnet demand for all statements, reports or summaries of those persons the State intended to call as witnesses was approved in State v. Cunha, 193 N.W.2d 106 (Iowa 1971).

The police report in question has been certified to this court. It does not meet the test. There was no error in depriving the defense access thereto.

■ While so holding, we encourage prosecutors to consider seriously whether any actual harm will come from permitting defense counsel to inspect documents in their files. If this can be done in fairness to the State as well as defendant, potential appeal grounds will be avoided. Prosecutors are also cautioned that suppression of exculpatory material is reversible error. See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Aossey, supra; State v. Niccum, supra.

Finally, defendant asserts he was deprived of a fair trial and due process because of procedures relating to his sentencing as an habitual criminal. He argues the certified mittimus was not sufficient to show prison commitment, the State did not show defendant was actually incarcerated in prison or prior convictions were not on appeal, and the prior five year sentences would be reduced automatically by "good time" to less than three years.

Section 747.5, The Code, provides:

" 'Habitual criminal' defined

Whoever has been twice convicted of crime, sentenced, and committed to prison, in this or any other state, or by the United States, * * * for terms of not less than three years each shall, upon conviction of a felony committed in this state after the taking effect of this section, be deemed to be an habitual criminal, and shall be punished by imprisonment in the penitentiary for a term of not more than twenty-five years * * *."

■ In pari materia with § 747.5 is § 747.6:

"On the trial of any cause, under the provisions of section 747.5, a duly authenticated copy of the former judgment and commitment * * * shall be competent and prima facie evidence of such former judgment and commitment, and may be used in evidence upon the trial of said cause."

The word "commitment" in § 747.6 is obviously used as a synonym for mittimus. "Commitment" has been defined as, "The warrant or *mittimus* by which a court or magistrate directs an officer to take a person to prison." Black's Law Dictionary 341 (Rev. 4th ed. 1968). We presume the legislature in § 747.5 used the words "committed to prison" in the same context. Hence, if the State can show a mittimus was issued ordering the sheriff to deliver defendant to prison, there would be sufficient evidence of commitment to take the issue to the jury.

■ Nor is there merit in the contention the State must show the prior convictions have not been appealed. The duly authenticated copy of the mittimus makes a prima facie case. It should be noted an appeal does not necessarily stay execution of a judgment. See § 793.10, The Code.

■ Neither do we believe § 747.5, The Code, requires the State to show defendant was actually incarcerated for at least three years on each prior conviction. The statutory reference is to the "term" of the sentence, not time actually served. To adopt defendant's rationale would mean a successful escape artist might never be sentenced as an habitual criminal.

We find no error, and accordingly the case is affirmed.

Affirmed.